DURBIN–DURCO, INC., a Corporation, and Bush & Latta Painting Company, a Corporation, now known as Georganna Corporation, and V. S. Durbin and J. G. Bartels, Respondents,

v.

BLADES MANUFACTURING CORPORATION, a Corporation, Appellant.

No. 54146.

Supreme Court of Missouri, Division No. 2.

June 8, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied July 13, 1970.

**450**

Armstrong, Teasdale, Kramer & Vaughan, John J. Cole, St. Louis, for respondents.

Bernard A. Barken, Harold L. Satz, St. Louis, for appellant.

BARRETT, Commissioner.

This is a suit in three counts by owner-landlords, only one of whom, Durbin-Durco, Inc., will be referred to representationally throughout this opinion, against their tenant, Blades Manufacturing Company. The three counts are (1) for rent and interest due under the lease (2) for damages for tortious injury to the building and (3) for unpaid taxes plus interest due under the terms of the lease. The tenant denied owing any of the sums claimed and asserted a counterclaim for multiple losses including $350,000.00 loss of profits (reduced to $30,000.00 and finally dismissed on the day of trial) and damages for failure of the landlord to maintain the exterior of the building thereby constructively evicting defendant and causing damages in excess of $45,550.00. A jury found for the plaintiff-landlord on the tenant's counterclaim and there is no question of substantive law on that issue—the only question on this phase of the cause is whether there were any admissions against interest in dismissed paragraph 10 for loss of profits. On the plaintiff-landlord's petition the jury found for the plaintiff and accordingly the court entered judgment on Count I for $48,400.00 rent for the unpaid balance of the lease and $12,859.00 interest, on Count II for $14,000.00 damages to the building and on Count III for taxes, plus interest, $3490.00. The de-fendant-tenant has appealed and contends that as a matter of law there was a completed surrender of the lease and therefore it was relieved of its obligation to pay rent and that as to Count II the plaintiff failed to make a submissible case on the allegation of damage to the property and in any event that the evidence was "so meager that no reasonable inference" could be drawn as to the cause of the damage. In the alternative the appellant-tenant claims that for three or more reasons relating to testimony, instructions and conduct of counsel it is entitled to a new trial on one or all counts.

The plaintiff-landlord bought the property known as 1366 Kingsland Avenue for the express purpose of leasing it to Blades, a manufacturer of airplane parts. The lease (as a matter of fact a series of leases and contracts) dated November 22, 1954, was for a period of ten years with an option to renew for five years with a graduated rental, $2200.00 a month for the last five years. The rent was paid for the period ending January 21, 1963. Under the terms of the lease the landlord was to maintain the exterior of the building and the tenant was to maintain the interior. There is some dispute as to when Blades moved its airplane manufacturing machinery from the leased premises to new plants in Rector and Walnut Ridge, Arkansas, but according to the plaintiff on February 12, 1963, it accidentally discovered that the defendant had vacated the premises and left the building in a seriously damaged condition. The appellant claims, however, as to Count I and the rent that the "undisputed facts," at least in their "cumulative effect" constitute "an intention (on the plaintiff's part) to accept appellant's surrender as a matter of law."

On Count I and liability for rent there is no significant difference of opinion as to the applicable general rules of "surrender" and its effect to extinguish the relationship of landlord and tenant. Crow v. Kaupp, Mo., 50 S.W.2d 995; 49 Am.Jur.2d (Landlord and Tenant) §§ 1094, 1099. The

appellant may have failed, however, to distinguish the cases in which there was no provision in the lease governing "abandonment" (Agers v. Courtois, Mo.App., 266 S.W.2d 5) and those in which a "provision of the lease \* \* \* expressly provides for the reletting of the premises in the event of the non-payment of the rent or failure of the lessee to carry out the obligations of the lease." Schulte v. Haas, 224 Mo.App. 365, 369, 287 S.W. 816, 818; Crow v. Kaupp, supra. Other factors overlooked are the options open to the landlord upon a tenant's complete abandonment before the expiration of the term (49 Am. Jur.2d § 1094, p. 1051; Consolidated Sun Ray, Inc., v. Oppenstein, 8 Cir., 335 F.2d 801) as well as the effect of a surrender on the tenant's liabilities even if effectuated. "Liabilities of the lessee accrued and actionable at the time of the surrender—such as his liability for rent accrued at that time, his liability for an existing breach of covenant to pay taxes on the demised premises or not to make or suffer waste thereon, or his liability on account of injuries to the demised premises actionable at the time of the surrender—are not affected." 49 Am.Jur. 2d § 1111, p. 1065.

■ In this case the lease provided that failure to pay any installment of rent or failure of the lessee to perform any of the lease provisions "shall at the option of Lessor cause the forfeiture of this lease." And the "Lessee hereby covenants with Lessor, that such forfeiture, annullment or voidance shall not relieve Lessee from the obligation of Lessee *to make the monthly payments of rent* hereinbefore reserved, \* \* \* and in the case of any such default of Lessee, Lessor may re-let said premises as the agent for and in the name of Lessee at any rental readily obtainable \* \* \* and Lessee hereby covenants and agrees that if Lessor shall recover or take possession of said premises as aforesaid, and be unable to re-let and rent the same so as to realize a sum equal to the rent hereby reserved, Lessee shall and will pay to Lessor any and all loss of difference of rent for the residue of the term." The appellant-tenant, nevertheless, points to its evidence which included a letter of February 13, 1963, to one of the respondent-landlords in which the tenant said that the building "has substantial structural defects which you have failed and refused to remedy." The letter stated that the defects were such that Blades was "unable to properly carry on our business." The letter concluded that "(u)nder these circumstances we were compelled to vacate said premises and now having completed moving we return herewith the keys to the same." In the next three months the landlord made efforts to sell or lease the premises and during that period spent in excess of $46,000.00 on repairs "which included betterments." And from these and other circumstances the tenant argues that the respondent-landlord's "acts and conduct should, as a matter of law, be held to be acceptance of Appellant's surrender" thereby relieving it of its obligations under the lease. The difficulty with appellant's position is that its proof and the inferences from it are not conclusive—they are not uncontradicted, on the contrary they are sharply disputed by the landlord's contradictory evidence.

In addition to the lease, the landlord's proof was that the tenant had, unknown to the respondent, surreptitiously vacated the premises on February 7, 1963 (and the landlord says that appellant's letter was but a confirmation of what it had already done, that is, abandoned the premises in breach of its lease). In addition, appellant left a "for rent" sign on the premises. Upon discovering that appellant had vacated the premises the landlord consulted its counsel and on February 12, 1963, wrote its tenant Blades a letter pointing out that rent due on January 21 had not been paid, that the premises "appear to be unoccupied," gates left open and attention was called to the lease provisions as to payment of rent. This letter concluded; "We also wish to advise that if you have vacated the premises, that nevertheless we shall look to you for the balance of the rent due under the

terms of the lease and we also intend to hold you liable for all damages due to the building because of your occupancy and apparent removal of machinery and fixtures." The building remained vacant and no rent was received by the landlord for the last twenty-two months' rent—the amount awarded plus interest.

There were other circumstances but these briefly noted bits of evidence from both sides are sufficient to demonstrate that there was not a surrender and acceptance by "operation of law." At best and in contrast to the cases relied on by the appellant "the trial court in this case, under the evidence could not properly have declared as a matter of law that there was a complete surrender by defendant to complainant of the premises involved herein. It was a case properly submissible to the jury." Shattlock Realty Co. v. Mays, 228 Mo.App. 1108, 1115, 63 S.W.2d 429, 432; Agers v. Courtois, Mo.App., 266 S.W.2d 5, 7; Rauth v. Dennison, Mo.App., 357 S.W.2d 201. In the latter opinion all the cases are collected, the precise distinction in surrender "by operation of law" is noted and all possible factors bearing on the acts and conduct of the parties are noted, particularly on the intention of the lessor, and the court concludes "certainly the evidence did no more than raise an issue for determination by the trier of the facts." (357 S.W.2d 1. c. 206.)

The appellant's second point that plaintiff failed to make a submissible case as to the cause of the damage to the premises is not based upon any principle of substantive law relating to basic liability. In fact there may be tacit recognition of the general rule "that it is the duty of the tenant to exercise ordinary care, in the use of the leased premises or property, not to cause any material and permanent injury thereto over and above the ordinary wear and tear, and that he is liable to the landlord in damages for any such injury unnecessarily resulting from his wrongful acts or his failure to exercise such care." Annotation 10

A.L.R.2d 1012 "Liability of tenant for damage to the leased property due to his acts or neglect." Illustrative incidents falling within this rule are Spring-Mercer Corporation v. Goodman, 126 Misc. 371, 213 N.Y.S. 500; Helton v. City of St. Joseph, Mo.App., 340 S.W.2d 198, and Sparks v. Lead Belt Beer Company, Mo., 337 S.W.2d 44. In the latter case the charge was that the tenant "negligently loaded the floors with a grossly excessive number of cases of beer, far exceeding the structural ability of the building." And these are claims not affected by "surrender," they are actionable and accrued and come within the tenant's duty "not to make or suffer waste thereon, or his liability on account of injuries to the demised premises actionable at the time of the surrender." 49 Am.Jur.2d § 1111, p. 1066; 51C C.J.S. Landlord and Tenant § 261, p. 681.

The appellant's appeal as to Count II and any damages it may have done to the building is directed to two problems with respect to testimony, one relating to at least two of plaintiff's witnesses and one relating to a defendant's witness on an offer of proof. One of the leading spirits of the landlord's group is Mr. Rothaus whose primary occupation is that of an accountant. He computed the rent and interest due and after testifying to the cost of repairs, $21,795.57 by one contractor, $15,870.00 by another, $6888.53 by another and finally a total expense of $46,544.47. He described the condition of the building at leasing, after termination and after reparations and gave it as his opinion that the market value of the property had been reduced $28,500.00 by the tenant's injury. A contractor, Mikkelsen, who repaired the building and made certain "permanent improvements" of $8,858.96 submitted a total itemized bill of $21,795.00. It is objected that he did not say that the listed damages might or could have been caused by the tenant's use of the premises. As to the concrete contractor whose bill was $15,870.00 it is said that he was "only qualified to testify as to the work done in laying concrete" and "was not qualified to

say what was the cause of the condition of the concrete."

■ These are the appellant's interpretations and argument but are sufficient to indicate, in view of the cases cited, that the problem is the sufficiency of basic data on which to give an opinion and ultimately the qualification of the various witnesses to express opinions as to the nature and cause of the damage to the building. For example in the cited case of Kinealy v. Southwestern Bell Telephone Co., Mo., 368 S.W.2d 400, an action for damages from ditching operations, a geologist testified "in generalities as to the scientific factors" causing landslides. But for "insufficiency of data at hand" he declined to express an opinion that ditching caused the landslide and so, of course, it was held that a jury could not have returned a verdict except by guesswork. And, of course, the expert's investigation and opinion must be based on "facts (truth) and adequate data" otherwise his testimony lacks probative force and leaves the ultimate issue to mere speculation. Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844. But here, one witness, the general contractor, made a personal inspection of the building and separated "betterment improvements" from repairs due to tenant misuse, cracked office partitions and in detail repairs to doors, plumbing, deteriorated docks and the removal of overhead tracks and supports. There were numerous photographs purporting to show tenant-caused damage. As the appellant asserts, the concrete contractor described the damaged floors and footings that he repaired but he declined to give an opinion as to the cause of the concrete's breaking up. But as to many of these items, other than a description of the damage, expert testimony was not really necessary and "the witness had made a personal inspection and was basing his opinion partly on his own knowledge of the conditions which he described." Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158. And the court concluded

in that opinion, "Our conclusion is that it was a jury question as to whether defendant's conduct directly contributed to cause the damage to plaintiffs' building so that the excessive rainfall was not the sole cause thereof but only increased or accelerated the harm to it."

■ In connection with this point the plaintiff's evidence tended to show that the defendant's heavy machinery injured the building, particularly the floors. The defendant attempted to show that the floor and wall damage were due to structural defects and the settlement of walls. One of the defendant-appellant's principal witnesses was its vice-president, Hunn, who testified to leaks in the roof, other exterior damage and complaints to its landlord. And then the appellant after photographs of other plants, offered to show that its machinery in plants in Maplewood and Walnut Ridge, Arkansas, had not damaged the buildings, particularly the floors. It is now urged that the conditions were substantially similar and that the court prejudicially erred in excluding its offers of proof. Here the appellant relies on 2 Wigmore, Evidence, §§ 442–443 and Poston v. Clarkson Construction Co., Mo. App., 401 S.W.2d 522, a blasting case. It is not necessary to elaborate on this subject, the tenant's experience in other plants was indeed a collateral matter and "(g)enerally, also, exclusion is required of all evidence of similar or comparable facts, acts, or conduct which are incapable of raising any reasonable presumption or inference as to any principal and material fact or matter in dispute." 29 Am.Jur.2d (Evidence) § 298, p. 343. And here as with the admission of the opinions of experts: "Nor can it be denied that in respect of a ruling on offered evidence of this kind (that certain mining machines were not adaptable to the Joplin area) the trial court is vested with a discretion which will not lightly be overruled." Lake Superior Loader Co. v. Huttig Lead &

Zinc Co., 305 Mo. 130, 140, 264 S.W. 396, 399.

■ In connection with the trial on its merits the appellant-tenant contends that the trial court prejudicially erred in permitting plaintiff's counsel to employ an abandoned portion of its counterclaim in the examination, particularly in cross-examination, of its witnesses. In ten separately numbered paragraphs the defendant claimed a total of $404,050.00 damages due to the landlord's breach of the lease, chiefly in its failure to maintain and repair the exterior of the building. In paragraph 7 the appellant claimed that due to the landlord's default it was unable to carry on its business and "was caused and required to vacate and move from the said premises and that by reason thereof plaintiffs evicted and constructively evicted defendant from said premises." In another paragraph $8500.00 damage was claimed for having to realign its machinery, in another $45,550.00 expenses for being compelled to move were claimed. And in paragraph 10 "by reason of the aforesaid conditions and the foregoing wrongful acts, neglect, breach and default on the part of the plaintiffs, as aforesaid, defendant was unable to perform and to adequately perform its contracts and to carry on its business to defendant's damage and *loss of profits* in the amount of * * * $350,000.00." The prayer for damages was reduced by amendment to $30,641.80 and on the day of trial paragraph 10, purportedly "without prejudice," was dismissed. The appellant-tenant contends that the court prejudicially erred in permitting plaintiff-landlord to employ this abandoned pleading particularly in the cross-examination of its vice-president and long-time secretary, Mr. Frey. Mr. Frey testified to the roof leaks, floor "upheaval" and other matters allegedly the fault of the plaintiff and to the tenant's attempts to repair the floors and walls and finally to the deterioration of the exterior of the building to such a degree as to force the "decision * * *

that since we could no longer operate properly in the place due to the conditions of the floor that we had to look for other space to do our manufacturing." And then on direct examination defendant established by this witness that "the man (be) who would have been able to reconstruct the books and records of the company in connection with any loss of profits" was deceased. In this category of ability to compute loss of profits he included "myself." On cross-examination he said that he could not "compute profit losses without the help of his deceased employee." And it was at this juncture that plaintiff's counsel began employing the counterclaim for lost profits of $350,000.00, discussed as late as the starting day of the trial. And later in cross-examination there was this question and answer: "Q. So originally when the move started the primary reason was overcrowding (after moving another manufacturing division into the plant) and not the condition of the premises. A. That is right." There was no further reference to the dismissed pleading in connection with this witness. By plaintiff's own witness plaintiff established that the counterclaim for loss of profits had been filed.

In this background the appellant contends that its claim of error is established by Macheca v. Fowler, Mo., 412 S.W.2d 462, a personal injury suit arising out of a four-automobile collision at Lindell and Whittier Streets in St. Louis. Multiple pleas aside the language relied on is this: "The evidence of what had been said in the deleted portion of the petition should not have been admitted because it did not constitute an admission. The plaintiff acknowledged that no claim was being made for lost wages. Certainly, the abandoned allegation did not contradict any testimony offered by plaintiff." It should be noted in passing that in that case and in contrast to the trial court here the court in that case granted plaintiff a new trial on the specified ground of error in permitting the

introduction in evidence of allegations from plaintiff's petition against two defendants who were relieved of liability on motion. It is not necessary to consider this rule in detail, it is sufficient to say that in some respects this is a borderline case. Undoubtedly the dismissal had the effect of eliminating from the case the issue of lost profits. Nevertheless, inferentially if not directly the loss of profits was involved in the building's disrepair and claim that the appellant could not therefore conduct its business in the building. In short, this paragraph related to the tenant's ability to perform its contract and to this extent bore on a "live issue" in the case. There is also a problem of whether the appellant acquiesced in part in the use of the pleading, at one juncture the court sustained its objection, and as to Mr. Frey there is the possible inference contradicting him if not touching on his credibility. In all these circumstances it may not be said that there was such manifest error that this court should grant the defendant a new trial on this ground. Carter v. Matthey Laundry and Dry Cleaning Co., Mo., 350 S.W.2d 786; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899; Hoffman v. Illinois Terminal R. Co., Mo.App., 274 S.W.2d 591, 594.

▋ The appellant-tenant's counterclaim for damages was submitted by instruction 9 upon the hypothesis that the building became "damaged and defective" due to "conditions and defects in the exterior" and "not occasioned by defendant's use of the leased building," that plaintiff failed to repair and by reason of the defective condition the building "was unfit for the purposes for which it was leased, and defendant could not properly operate its business in said premises and by reason thereof defendant moved and surrendered to plaintiff possession of said leased premises." It should be added that by instruction 6 the appellant submitted as a defense to Counts I and II defects and surrender of the building by reason of "defects in

the exterior." Against this submission the court gave instruction 10 which insofar as material here directed a finding for plaintiffs unless the jury believed that "the exterior of the subject premises were in such a state of disrepair that defendant could not reasonably conduct its business therein" and that plaintiff knew of the disrepair and there was a reasonable opportunity to repair the building before vacation. The appellant insists that converse instruction 10 is erroneous and prejudicial in submitting disrepair of the "exterior" when defendant submitted "the issue of the *condition of the interior due to the condition of the exterior thereof*." It is said that instruction 10 is erroneous in that it is not in substantially the same language "used in the verdict director" on the counterclaim. It is urged that the instruction is misleading in that under its direction the jury would give no consideration to the effect of the settlement of the exterior walls on the interior floors, said to be an essential element of defendant's case and thus it is contended that under Austin v. Western Auto Supply Co., Mo., 421 S.W.2d 203, it is entitled to a new trial. The argument ignores, incidentally, the fact that in the Austin case (breach of warranty of fitness of an automobile jack) the defendant by using the language "as a direct result of the *condition* of the jack" injected a foreign element—one not in issue—into the case and thus there was a *misdirection*.

But nowhere in instruction 9 is there mention, as stated in appellant's point, even inferentially "of the condition of the interior due to the condition of the exterior." Instruction 9 submits only plaintiff's duty "to maintain and make repairs to the exterior." It may well be that the end result would be damage to the interior (all a matter of argument) but the instruction does not in terms say so. And, of course, the essence of the appellant's counterclaim for damages was as conversely submitted in instruction 10 "that the ex-

terior of the subject premises were in such a state of disrepair" that it could not carry on its business of manufacturing airplane parts and therefore was compelled to move. There were no pattern instructions in MAI directly covering the subject matter of this case and only the general comments on Rule 33.01 are helpful and they recognize that a party may converse "any one of the elements essential to" recovery. MAI p. 349. And plainly enough here, the "exterior" in instruction 10 and throughout was the very essence of appellant's counterclaim. The consequence is that instruction 10 was not prejudicially erroneous. Plas-Chem Corporation v. Solmica, Inc., Mo., 434 S.W.2d 522.

■ And finally the appellant contends that the court *"abused its discretion"* in refusing to declare a mistrial because of the conduct of respondent's counsel in repeatedly interjecting inflammatory, prejudicial matters thereby depriving it of a fair trial. In essence appellant attempts to bring this phase of its appeal within the "cumulative effect" doctrine of Faught v. Washam, Mo., 329 S.W.2d 588. It is not necessary to further encumber this opinion with detail, two of the cases cited by appellant recognize, especially when objection has been sustained in part, that in view of the trial judge's superior position to judge of the prejudicial effect of argument that deference is paid his ruling during the trial and on motion for new trial. Comstock v. Ingles, Mo., 296 S.W. 2d 68. "The refusal to discharge the jury under the circumstances was not an abuse of judicial discretion and did not result in error." State ex rel. State Highway Comm. v. Cone, Mo., 338 S.W.2d 22, 30. When in his opening statement plaintiff's counsel used the words "jump the lease" and spoke of a "dummy corporation" in Arkansas the court sustained the only objection made and instructed the jury to "disregard that last remark." The opening statement continued and when counsel referred to a union dispute and the laying off of 35 employees, the court sustained the objection but refused to discharge the jury. In the course of the direct examination of one of the plaintiffs, Mr. Bartels, counsel engaged in a colloquy, defendant's counsel made an objection and then proceeded to make a statement as to plaintiff's counsel. In reply plaintiff's counsel denied the accusation and said, "We have lived up to our terms." After further colloquy and finally an objection the court made this ruling, "The request for a mistrial is overruled. I am going to tell the jury to disregard it, strike it from the record. *I think you are both guilty of some extraneous statements here, so let's stick with the witnesses instead of lawyers testifying."* There was further bickering and finally the court instructed the jury to disregard counsel's statement "and it may be stricken from the record." After further statements of counsel the court instructed the jury to disregard certain remarks by defendant's lawyer. In the course of Mr. Durbin's testimony and his statement of 40% ownersip of the building his lawyer inquired, "And you are still paying your share of the mortgage money quarterly?" There was an objection which the court sustained and in the course of counsel-colloquy the court observed, "Now, I don't think that it is relevant in any way, shape or form, but by the same token I don't think that it is prejudicial," and the court denied the request for a mistrial. In the examination of this witness there was a reference to other litigation between the parties as to certain machinery and equipment and again upon objection after a lengthy statement by defendant's lawyer the court overruled the only request made for a mistrial, the witness had not answered the question. In cross-examination of a defense witness plaintiff's lawyer inquired about a union grievance in connection with their moving out and after further quarrelsome statements between counsel the court sustained objections but refused to declare a mistrial. Repeatedly after comments by counsel, "Oh, brother!" the court would inquire, "Do you object?" and counsel answered in

the affirmative, the court ruled: "The objection is sustained, and the request for a mistrial is overruled."

In this background appellant claims a calculated course of conduct by plaintiff's counsel designed to inflame the jury. Aside from appellant's counsel's contribution to the unnecessary colloquies between counsel rather than making objections and addressing only the court, the incidents are not comparable to the "rich man, poor man" argument in Green v. Ralston Purina Company, Mo., 376 S.W.2d 119. And here the court again considered all these matters in ruling on the motion for new trial and thus ultimately the appellant is not claiming an abuse of discretion in the first instance, it is asserting an abuse of discretion in not granting a new trial. Some of the questions and cross-examination were as to collateral matters, much of it irrelevant if not entirely improper but "the extent of the cross-examination was well within the court's unabused discretion" and on the whole, in view of the court's rulings, the conduct complained of was not so manifestly inflammatory as to demand the granting of a new trial by this court. Parmley v. Henks, Mo., 285 S.W.2d 710, 713.

Appellant was not entitled to judgment as a matter of law on either of the three counts and since there was no such prejudicial error in any of the respects urged as to demand the granting of a new trial the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, P. J., FINCH, J. and BONDURANT, Sp. J., concur.

MORGAN, J., not sitting.