**Richard GRUBER, Appellant,**

v.

**Gabor ADLER, Respondent.**

**No. WD30967.**

Missouri Court of Appeals, Western District.

June 9, 1980.

---

**3.** Now § 528.010, RSMo 1978.

John Joseph Morris, Vold, Sullivan, Finnegan & Williams, P. C., Kansas City, for appellant.

Norman M. Rankin, Kansas City, for respondent.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and KENNEDY, JJ.

WASSERSTROM, Chief Judge.

Plaintiff initiated this suit in a magistrate court to collect unpaid rent on an apartment leased by him to the defendant. Defendant filed a counterclaim for loss of personal property. The magistrate entered judgment for the plaintiff for the amount of rent claimed, and defendant appealed to the circuit court. Upon bench trial in the circuit court, judgment was entered for defendant with respect to the rent, and for plaintiff with respect to the counterclaim. Plaintiff pursues this appeal to this court with respect to the disallowance of rent; no appeal with respect to the disallowance of the counterclaim has been filed by defendant.

The evidence shows that the parties entered into a Rental Agreement dated February 11, 1977, which called for a total rental of $5,400, payable $450 on the 15th day of each month. The Agreement further provided that "the tenant is obligated for the total amount due unless the premises are re-rented."

Defendant and his wife entered into possession shortly after the lease was signed, but marital problems soon developed. A separation occurred and the wife moved out early in May 1977, taking the furniture, all of which belonged to her. Divorce proceedings were instituted, and a decree dissolving the marriage was entered June 3, 1977.

Following the separation, conversations began between plaintiff and defendant regarding defendant's desire to be relieved of his obligation under the lease. The parties substantially agreed as to the nature of those conversations. Thus defendant testified as follows:

"Q Did you have any inclination [sic] on the 1st of June that indeed on the 3rd of June you would be divorced?

A At that time the divorce situation was on and off on a daily basis, I didn't know exactly, there was a possibility I was going to be divorced, a good possibility, and I explained to Mr. Gruber that if I was, I would like for him to try to attempt to sublease.

Q You had asked him to sublease on your behalf or you would sublease on your behalf.

A We had talked about it * * *."

Plaintiff's testimony on the subject was essentially the same:

"Q Did you have a discussion about Mr. Adler's tenancy?

A Yes.

Q And what was the substance of that conversation?

A Yes. I met Mr. Adler at his store on Wornell [sic], we went across the street to the doughnut shop and had coffee because Mr. Adler was busy in the store and couldn't discuss his problems and basically what he told me was that his wife had left, he was no longer living at the premises and would I please sublease the property and I told him that I would and I collected the rent check with the late fees and we, in fact, did list the property and attempt to rent it."

Plaintiff's wife testified that she heard some of the conversation on this subject, and she testified in that regard as follows:

"Q On approximately how many occasions, did Mr. Adler call your residence and you overheard such conversations?

A I would say three or four.

Q Was Mr. Adler's tone friendly?

A The first conversation he was pleading, he said that he really was in a jam, that his wife had moved and that he could no longer keep the house and he wanted my husband to get him out of the lease, and those are the words he used, 'Get me out of the lease.'

Q Do you recall then the nature of the subsequent two or three conversations?

A In later calls he would ask if Dick had figured out a way to get him out of the lease and each time my husband would say that until it was re-leased or sold, that he was responsible for it."

Plaintiff sent in a crew of young men on June 6 to clean up the premises as a preliminary to attempting to relet the apartment. The crew found no evidence of anyone living in the apartment but did find a few items of men's clothing hanging in a closet, a television set and some books. According to the practice permitted by plaintiff and generally followed by the cleanup crew, they took for themselves the television set and items of clothing they thought they could use or salvage, and bagged everything else as trash to be thrown away. Defendant later remonstrated about his items which had been so taken, and plaintiff had the young men in the cleanup crew return what had been taken and made available to defendant the other items including the books in question.

■ Following cleaning up of the apartment, plaintiff listed the property with three rental agencies and also advertised the premises for rent and for sale himself. The attempts at reletting were unsuccessful, and plaintiff filed the suit for rent in the magistrate court on June 23, 1977. Thereafter plaintiff did arrange a sale, and title passed January 1978. Plaintiff's petition was amended in the circuit court so as to pray recovery of rent from June 15, 1977, to January 3, 1978, together with other elements of alleged damage.[1]

### I.

■ The circuit court decided this case on the basis of a finding that "there was a

1. As to plaintiff's right to so amend in the circuit court, see *Norvell v. Schupbach*, 185 S.W.2d 323 (Mo.App.1945).

surrender of the premises by the tenant and a cancellation of the lease agreement." The evidence abundantly shows a surrender by the tenant. However, a lease cannot be terminated and canceled by the mere unilateral act of surrender by the tenant, but before such a cancellation can be effected there must be in addition an acceptance on the part of the landlord. *Crow v. Kaupp*, 50 S.W.2d 995 (Mo.1932); *Rauth v. Dennison*, 357 S.W.2d 201 (Mo.App.1962). The burden of proving such an acceptance rested upon defendant, as the one asserting surrender and acceptance. *Rauth, supra*; 49 Am.Jur.2d Landlord and Tenant § 1094, p. 1052; 51C C.J.S. Landlord and Tenant § 126(b), p. 407.

The principal factor in this case tending to show an acceptance by plaintiff of the surrender was plaintiff's reentry upon the premises and his attempts to relet. That factor is not legally sufficient to constitute an acceptance for a number of reasons.

■ In the first place, plaintiff's reentry and attempt to relet was pursuant to a right impliedly granted to him under the Rental Agreement. The Missouri cases hold that if a lease contains a clause granting to the landlord a right to reenter and re-lease in the event of the tenant's default, such a provision constitutes a consent by the tenant to the reentry and reletting and prevents the landlord's action from constituting an acceptance of the surrender. *Crow v. Kaupp, supra; D. A. Schulte, Inc. v. Haas*, 224 Mo.App. 365, 287 S.W. 816 (1926); *Durbin-Durco, Inc. v. Blades Manufacturing Corp.*, 455 S.W.2d 449 (Mo.1970); *Hurwitz v. Kohm*, 594 S.W.2d 643 (Mo.App. 1980).

It is true that the clause here states merely that "the tenant is obligated for the total amount due unless the premises are re-rented." This clause is not artfully drafted, but it can only be read as reflecting an intention to give the landlord the same right of reentry and reletting which is commonly inserted in leases. So interpreted, that clause brings this case within the line of cases cited immediately above.

Even if the present lease were said to be deficiently short of the standard reentry and reletting clause, nevertheless the entry and attempt to relet in this case was not an acceptance of the surrender, because the parties understood that the reentry and attempt to relet was for the tenant's benefit and was not to release him from a continuing obligation for the rent. This was admitted by defendant's own testimony when he agreed that he had asked plaintiff to sublease on his (the defendant's) behalf. Moreover, the evidence on behalf of plaintiff showed without contradiction that plaintiff expressly notified defendant that he would remain liable for unpaid rent if reletting proved unsuccessful. Such notice precludes a finding of acceptance. *Crow v. Kaupp, supra; Durbin–Durco, Inc. v. Blades Manufacturing Corp., supra.*

■ Still another consideration deserves to be taken into account. Ample authority exits that a reentry by the landlord without notice to the tenant plus a reletting by the landlord adds up to a surrender by operation of law. However, that same result does not follow if the landlord merely makes an attempt to relet without being successful in so doing. *Buck v. Lewis*, 46 Mo.App. 227 (1891); *Rauth v. Dennison, supra*; and the series of annotations entitled "When landlord's reletting, or efforts to relet, after tenant's abandonment or refusal to enter, deemed to be acceptance of the surrender," 3 A.L.R. 1080, 52 A.L.R. 154, 61 A.L.R. 773, 110 A.L.R. 368. Under those authorities, the fact that plaintiff in this case never succeeded in reletting must be treated as significant.[2]

Aside from the reentry and attempts to relet by plaintiff, the only other factor in this case which could possibly support a

---

2. In making this statement, we are aware of the following language in *Hurwitz v. Kohm, supra*, at 646: "If no notice is given and landlord resumes possession, he is deemed to be doing so to terminate the lease." However, the statement just quoted constituted only dictum and should not be considered as repudiating the well-considered rulings in *Buck* and *Rauth, supra*, which apparently were not called to the attention of the *Hurwitz* court.

finding of an acceptance of defendant's tender, would consist of the fact that plaintiff cleaned up the premises and his cleanup crew took away some of defendant's personal property. The cleaning up of the premises is not a significant element in the case, and constitutes purely a neutral fact, since this was an action which plaintiff would have taken whether he were resuming possession for his own benefit or for the benefit of the defendant tenant. *Hurwitz v. Kohm, supra.*

To conclude, defendant failed in his burden of proving that plaintiff accepted the surrender of the premises. Plaintiff is entitled to a reversal under *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), because the decision of the circuit court either applied an incorrect legal principle or else there is no substantial evidence to support it.

## II.

Defendant makes no attempt in his brief to justify the circuit court decision on the theory of termination of the lease by surrender and acceptance. Instead, defendant argues in this court that he should be considered as relieved of all obligation under the lease because plaintiff constructively evicted him. That contention is not supported by the evidence.

In order for there to be a constructive eviction, the landlord must interfere with the tenant's beneficial use of the premises. *Yaffe v. American Fixture, Inc.,* 345 S.W.2d 195 (Mo.1961). The only fact in this case to which defendant can point as constituting an interference with his use of the premises in the action of the cleanup crew. On substantially identical facts, *King v. Petroleum Services Corporation*, 536 P.2d 116 (Alaska 1975), held the evidence not to show a constructive eviction.

Plaintiff's reentry here was pursuant to defendant's request and after defendant had already effectively surrendered the premises. Plaintiff's reentry, cleaning up of the premises, and removal of a few minor items of personal property cannot in any sense be considered a constructive eviction.

The judgment of the circuit court is reversed and the cause is remanded for assessment of damages.

All concur.