**WINDSOR REAL ESTATE &
MORTGAGE COMPANY,
Plaintiff-Appellant,**

v.

**Thomas RUMA, Defendant-Respondent.**

No. 49575.

Missouri Court of Appeals,
Eastern District,
Division One.

March 25, 1986.

Motion for Rehearing and/or Transfer
Denied April 22, 1986.

Application to Transfer Denied
June 17, 1986.

John W. Moticka, Greensfelder, Hemker,
Wiese, Gale & Chappelow, St. Louis, Mo.,
for plaintiff-appellant.

Patrick R. Gunn, Patrick J. Boyle, Gunn
& Gunn, St. Louis, for defendant-respondent.

CARL R. GAERTNER, Presiding Judge.

Plaintiff Windsor Real Estate and Mortgage Company was the lessor and defendant Thomas Ruma was the lessee of premises in the Covington Manor Shopping Center in St. Louis County. The shop space was a shell when defendant took possession of it in 1976. Defendant improved the premises between 1976 and 1979, however, converting the shell into a pizza parlor and commissary.

On October 7, 1979, a fire rendered the premises "unfit for occupancy" within the meaning of paragraph 18 of the lease. In pertinent part, paragraph 18 provided:

> If the demised premises shall be destroyed or damaged by fire or other casualty so as to be unfit, in whole or in part, for occupancy and such destruction or damage could, as determined by Landlord in good faith, reasonably be repaired within six (6) months from the happening of such destruction or damage, Tenant shall not be entitled to terminate this lease nor shall Tenant's obligations under this lease cease without the mutual written consent of the parties hereto; but, Landlord shall repair destruction or damage with all reasonable speed and dispatch subject, however, to delays be-

yond Landlord's control, it being expressly understood, however, that Tenant shall pay no rental during such interruption of occupancy.

Defendant demanded plaintiff restore the premises and replace the fixtures defendant had installed to convert the shell to a pizza parlor and commissary. By January 1, 1981, plaintiff had restored the premises to a shell. Plaintiff refused to replace defendant's improvements, however, and denied it had any obligation to do so under the lease. When as a result defendant refused to resume possession, plaintiff began to look for a new tenant. On November 1, 1981, three months prior to the expiration of defendant's lease, a new tenant was found and the premises were relet.

In November, 1981, plaintiff sued defendant to recover rent for the 10 months the premises had lain vacant. Defendant answered alleging plaintiff's refusal to restore the premises to a pizza parlor and commissary operated to terminate defendant's obligations under the lease and, alternatively, that plaintiff had impliedly accepted defendant's surrender of the premises by attempting to relet them for a greater rent than was readily obtainable under the circumstances. The trial court found for defendant. Plaintiff appealed.

On appeal we determined plaintiff had no obligation under the lease to restore the premises to a pizza parlor and commissary. *Windsor Real Estate and Mortgage Co. v. Ruma,* 674 S.W.2d 252, 255 (Mo.App.1984). Accordingly we held plaintiff's refusal to restore defendant's improvements did not, by itself, relieve defendant of his obligation to pay rent. The merit of defendant's alternative claim, that his obligation to pay rent ended when plaintiff reentered the premises and attempted to relet them on its own behalf, was, on the other hand, unclear. Paragraph 36 of the lease expressly granted plaintiff the discretion to reenter the premises upon defendant's default and

relet them as agent for and in the name of defendant "at any rental readily obtainable." Paragraph 36 also expressly provided that notwithstanding plaintiff's reentry and attempt to relet, defendant's obligation to pay rent would continue for the term of the lease. Defendant, however, had persuaded the trial court that because plaintiff had attempted to relet the vacant premises for more than what defendant was bound to pay under the lease, plaintiff had impliedly accepted defendant's surrender of the premises and had attempted to relet them for its own benefit. *Id.* at 254.

Noting the lease contemplated reletting "at *any* rental readily obtainable," we rejected the trial court's conclusion that plaintiff's attempt to relet for more than what defendant was bound to pay under the lease amounted to acceptance of defendant's surrender. If the new rental rate of $1,000.00 per month for three years was a "rental readily obtainable," we determined, no surrender could be inferred. *Id.* at 256. On the evidence before us at that time, however, we were unable to determine whether the rate was "rental readily obtainable." Sylvester Striler, plaintiff's Senior Property Manager, had testified $1,000.00 per month for three years was their market rate. No other evidence was offered by plaintiff or defendant, nor did the trial court make any findings regarding the issue. We therefore remanded for a determination whether the rent plaintiff sought when it attempted to relet the premises was "readily obtainable" within the meaning of Paragraph 36 of the lease. On remand the trial court determined it was not and that defendant's obligation to pay rent therefore terminated on January 1, 1981, the day plaintiff reentered the premises.

 Plaintiff on this appeal does not dispute the trial court's finding that $1,000.00 per month for a term of three years was not readily obtainable.[1] Plaintiff neverthe-

---

1. Defendant filed a motion to dismiss this appeal when plaintiff stated in its reply brief that it did not dispute the trial court's determination that $1,000.00 per month for a three-year term was not "rental readily obtainable." We deny the motion because we find plaintiff's "concession" does not dispose of the issue before us.

less asserts the evidence precludes the inference that plaintiff accepted defendant's surrender. Because of the additional evidence adduced at the second hearing, we agree with this contention. The record of the remand proceedings discloses that $1,000.00 per month for three years was not the only term upon which a prospective tenant could have leased the property. Rather, the evidence was undisputed that all prospective tenants were told that as an alternative they could either assume defendant's lease for the remainder of defendant's term at defendant's rate of $858.00 per month, or sublease the premises from defendant for the remainder of defendant's term at any rate defendant would accept. We find this evidence as a matter of law precludes the inference that plaintiff accepted defendant's surrender.

If a lease grants a landlord the right to reenter and relet premises upon a tenant's default, the landlord's attempt to relet cannot, in and of itself, constitute acceptance of the tenant's surrender. *Gruber v. Adler*, 600 S.W.2d 669, 672 (Mo. App.1980). Nor will acceptance of surrender necessarily be inferred if the landlord attempts to obtain more rent from a prospective tenant than the defaulting tenant was bound to pay. *Windsor Real Estate and Mortgage Company v. Ruma, supra.* On the first appeal we indicated that if $1,000.00 per month for a term of three years was "rental readily obtainable" an inference of surrender was necessarily precluded. We did not discuss the implications of a contrary finding, but the evidence adduced on remand renders such discussion unnecessary. The uncontradicted evidence that plaintiff told prospective tenants they could negotiate with Ruma militates against finding that plaintiff accepted Ruma's surrender. The trial court therefore erred when it concluded plaintiff's attempt to relet relieved defendant of his obligations under the lease.

At the first trial in this case defendant by way of counterclaim alleged, and the trial court found, that plaintiff had converted personalty defendant had left on the premises. Plaintiff challenged this finding in its first appeal. We held the trial court's finding was supported by substantial evidence but remanded the matter for further findings as to the value of the property converted. On remand the trial court determined the value of the converted property was $4,028.96. Plaintiff does not challenge this determination. The trial court's judgment insofar as it relates to the value of the converted property is therefore affirmed. The judgment for defendant on plaintiff's petition to recover unpaid rent, however, is reversed for reasons stated in this opinion. The trial court is directed to enter judgment for plaintiff for (1) unpaid rent and utilities for the period between January 1, 1981 and October 31, 1981; (2) interest due pursuant to Section 408.020, RSMo.1978; and (3) costs, attorney's fees and expenses incurred in the prosecution of this lawsuit, pursuant to paragraph 38 of the lease.

So ordered.

SMITH and SNYDER, JJ., concur.