BRYWOOD LIMITED PARTNERS, L.P., a Mo Corp., Respondent,

v.

H.T.G., INC. d/b/a Hollywood To Go & Larry Minkoff, Appellant.

No. WD 47295.

Missouri Court of Appeals, Western District.

Dec. 7, 1993.

Jennifer L. Lewis, Law Offices of John Ivan, Shawnee Mission, KS, for appellant.

Paul B. Torline, Lewis, Rice & Fingersh, Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This landlord-tenant action involves a breach of a commercial lease agreement by tenant and a resulting suit for damages by landlord. Defendant Larry Minkoff appeals from the trial court's judgment ordering him to pay $39,461.44 for damages resulting from the breach of the lease agreement, plus costs. The trial court found Minkoff liable on a personal guaranty of the commercial lease.

Judgment is affirmed.

This action for damages was commenced by a Missouri limited partnership which owns the Brywood Shopping Center ("plaintiff") located in Kansas City against a tenant, H.T.G., Inc. and a guarantor, Larry H. Min-

koff ("defendant")[1] for the breach of a lease agreement. Plaintiff leased retail space located in the Brywood Shopping Center to H.T.G. The written lease agreement, which was signed on August 7, 1991, had a three year term. Concurrently, Defendant Minkoff signed a personal guaranty in support of the lease agreement. The lessee, H.T.G., Inc. operated a video sales and rental store on the leased premises from August 7, 1991 until November 19, 1991. H.T.G. thereafter surrendered possession of the premises to plaintiff.

H.T.G. paid rent to plaintiff for the month of August in the amount of $1,855.00 and also paid one-half of the security deposit in the amount of $1,166.66. No payment was made by H.T.G. for the months of September, October or November. According to Plaintiff–Respondent Brywood, default occurred September 1, 1991. Plaintiff made written demand on H.T.G. for the past due rent but H.T.G. refused to pay. On November 18, 1991, plaintiff sent a letter to H.T.G. giving notice of its termination of H.T.G.'s right to possess the premises. In the letter, plaintiff specifically stated that its actions did not constitute termination of the lease. Plaintiff retook possession of the premises and expended over $300.00 cleaning the space after H.T.G.'s departure. Plaintiff attempted to relet the premises by posting notices in the windows of the space. Additionally, two members of plaintiff's staff attempted to lease the premises. As a result of these efforts, the space was shown to 6 or 7 prospective tenants. The space was not leased prior to the commencement of this action.

Plaintiff failed to obtain valid service of process upon H.T.G. and the trial court therefore dismissed Count I of plaintiff's petition for damages against H.T.G. Plaintiff proceeded with Count II of its petition seeking to recover rent, prejudgment and post-judgment interest and costs, including reasonable attorney's fees, against Defendant Minkoff under the personal guaranty of the commercial lease between plaintiff and H.T.G. Plaintiff requested summary judg-ment on the issue of defendant's liability under the personal guaranty, which the trial court granted. On November 5, 1992, the trial court entered judgment against defendant on Count II of plaintiff's petition on the issue of liability and set a hearing to resolve the issue of damages. On November 30, 1992, the trial court entered judgment against Defendant Minkoff for the sum of $39,461.44, plus costs.

Review of this court-tried action is governed by the principles set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), which require this court to affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law.

## *Issue of Liability*

First, defendant claims that the trial court erred in granting summary judgment to plaintiff on the personal guaranty because a genuine issue of material fact existed concerning whether plaintiff's actions operated to terminate the lease, thereby discharging defendant from liability under the personal guaranty. Defendant argues that it was error for the trial court to grant summary judgment in plaintiff's favor because plaintiff failed to relet the premises to another tenant and elected to seek damages. Defendant asserts that plaintiff was required to elect to terminate the lease, or to collect damages, but that plaintiff cannot do both under the terms of the lease.

■ A lessor can recover on an unconditional guaranty of a lease by proving a claim against the tenant on the underlying lease agreement. *See Trenton Trust Co. v. Estate of Maxwell,* 739 S.W.2d 742, 743–44 (Mo.App. 1987). Plaintiff established the claim based on the written lease executed between plaintiff and H.T.G. Thus, plaintiff illustrated that it was entitled to recover against both H.T.G. and the guarantor of the lease.

■ A lease cannot be terminated by the unilateral act of the tenant. A tenant

1. Before the commencement of trial, the trial court granted summary judgment to H.T.G. because Brywood failed to obtain personal service on the company. Thus, we will refer to Minkoff as "defendant."

may surrender a lease, but the lease will not be terminated unless the landlord accepts the surrender. *Gruber v. Adler,* 600 S.W.2d 669, 672 (Mo.App.1980). The court in *Gruber* specifically held that mere re-entry by landlord upon premises in an attempt to relet the premises is not sufficient alone to constitute termination. 600 S.W.2d at 672. Tenant must prove that landlord accepted the cancellation of a lease. *Id.*

In Missouri, upon a tenant's default a lessor has three options: 1) the lessor can remain out of possession, treat the lease as subsisting and collect rent; 2) the lessor can give notice to tenant, resume possession of premises and attempt to mitigate damages by reletting the premises; or 3) re-enter, resume possession and effectively terminate the lease. *MRI Northwest Rentals Investments I, Inc. v. Schnucks–Twenty–Five, Inc.,* 807 S.W.2d 531, 534 (Mo.App.1991). In this case, plaintiff chose the second option. On November 18, 1991, plaintiff served a notice of termination of possession upon H.T.G. Plaintiff then attempted to relet the premises. The lease agreement clearly allowed plaintiff to take such action without terminating the lease as illustrated in the following provision:

> If an event of default occurs, the lessor may elect to re-enter ... and it may either terminate this lease, or it may from time to time without terminating this lease make such alterations and repairs as may be necessary in order to re-let the premises.... No such re-entry or the taking of possession of the leased premises by the lessor shall be construed as an election on its part to terminate this lease or to accept a surrender thereof unless a written notice of such intention be given to lessee.

In the notice plaintiff sent to H.T.G., it specifically stated its intention not to terminate the lease. Plaintiff wrote that:

> Without prejudice to any other rights and remedies it may have by reason of your default, Owner hereby exercises its right pursuant to Article 14.02 of the lease, (i) to terminate your right to possession of the Leased Premises *without terminating the lease,* such termination to be effective on November 25, 1991 (the "Effective Date")

without further notice, and (ii) from and after the Effective Date, to re-enter the Leased Premises, to make such alterations and repairs as may be necessary to re-let the Leased Premises, and to re-let the Leased Premises or a part thereof for such term or terms and upon terms and conditions as owner in its sole discretion shall deem advisable.... (Emphasis added).

Based on the letter sent from plaintiff to H.T.G. and plaintiff's actions, it is clear that plaintiff intended to retake possession of the premises without terminating the lease. It is equally clear that defendant failed to prove that plaintiff accepted H.T.G.'s cancellation of the lease. The *Gruber* court held that an unsuccessful attempt to re-let leased premises does not result in a surrender by operation of law. 600 S.W.2d at 672. Summary judgment is proper if no genuine issue of any material fact exists and movant is entitled to summary judgment as a matter of law. Rule 74.04(c); *Irwin v. Wal–Mart Stores Inc.,* 813 S.W.2d 99, 101 (Mo.App.1991). No material issue of fact existed as to whether plaintiff's actions terminated the lease. It is clear that plaintiff sought only to terminate H.T.G.'s right to possession without terminating the lease. Plaintiff's actions are in conformity with this intent. Thus, we conclude that the trial court did not err in granting summary judgment for plaintiff on the issue of liability. Point I is denied.

### *Award of Damages*

Next, defendant argues that the trial court erred in its award of damages against him by incorrectly interpreting § 14.02 of the lease agreement to be ambiguous and as entitling plaintiff to the sum of $32,684.91. Defendant argues that the trial court's ruling ignores the plain language of § 14.02, which, according to defendant, clearly and unambiguously indicates that the annual rent to which lessor is entitled is the average annual and minimum percentage rents paid by lessee from the commencement of the term to the time of default, which was $1,855.00.

Defendant contends that the following excerpt from § 14.02 is controlling on the issue of what damages plaintiff is entitled to receive:

In determining the rent which would be payable by lessee hereunder subsequent to default, the annual rent for each year of the unexpired term shall be equal to the average annual minimum and percentage rents paid by lessee from the commencement of the term to the time of default, or during the preceding three (3) full calendar years, whichever period is shorter.

H.T.G. made one payment under the lease agreement for the month of August in the amount of $1,855.00. Thus, defendant urges that the average annual minimum and percentage rents paid by lessee from the commencement of the term to the time of default equalled $1,855.00. Therefore, under defendant's argument the annual rent to which lessor is entitled in accordance with § 14.02 is the sum of $1,855.00. Defendant's reading of the lease is completely strained and unrealistic. It is clear the purpose of the lease provision is to average and annualize the rent paid prior to the time of default. In this case, the trial court averaged and annualized the rent paid prior to the default. The sum of $1,855.00 represented the rent payment for the one month prior to default. Instead of dividing $1,855.00 by twelve as the defendant suggests, the proper measure of damages is to determine the average annualized rental by *multiplying* $1,855.00 by twelve, then comparing that annualized figure to the unexpired term of the lease. The trial court in this case gave H.T.G. the benefit of the doubt by disregarding the percentage rent and calculating the damage based only on the minimum rent of $1,500.00. Thus, defendant has no complaint concerning the judgment for damages under the lease. Point II is denied.

### Mitigation of Damages

Defendant suggests that the trial court erred in determining that plaintiff had made reasonable efforts to mitigate its damages. Defendant asserts that plaintiff failed to make reasonable efforts to relet the premises. Generally, under Missouri law, a lessor does not have a duty to mitigate damages by attempting to relet premises after a lessee defaults on the lease or abandons the premises prior to the expiration of the lease. *MRI Northwest Rentals,* 807 S.W.2d at 534. Lessor may simply allow the premises to remain idle and continue to collect rent as it becomes due. *Id.* However, once the lessor accepts possession of the premises and attempts to mitigate damages by trying to relet the premises, he or she voluntarily assumes a duty to mitigate. *Id.* Although the lessor is not required to do everything imaginable to mitigate damages, his or her attempts must be reasonable. *Id.* at 536.

In this case, plaintiff made reasonable efforts to mitigate damages by attempting to relet the premises. A representative for plaintiff testified that he posted notices upon the property indicating that it was available to lease. The evidence further revealed that two agents were staffed full-time to lease empty spaces at the Brywood Shopping Center. Furthermore, the space was shown six or seven times to prospective tenants. Plaintiff's efforts constituted a reasonable attempt to mitigate damages.

Defendant claims that plaintiff's efforts were unreasonable because plaintiff only showed the premises to six or seven prospective tenants in a year, took no action to alter or divide the premises into smaller units, failed to assign sufficient personnel to lease the space, failed to run any advertisements concerning the availability of the space and failed to allow any outside brokers to market the space. The court in *MRI Northwest* held that it was not unreasonable for a lessor to choose not to advertise the premises' availability in a publication or enlist the aid of a broker to lease the premises. 807 S.W.2d at 536; *see also Kamada v. RX Group Ltd.,* 639 S.W.2d 146, 149 (Mo.App.1982). Moreover, defendant has failed to present case law showing that a lessor has a duty to subdivide the premises into smaller units or to show the property to a certain number of prospective tenants. Furthermore, defendant presents no evidence to show that such efforts would have resulted in finding a new tenant. Thus, we conclude that the trial court did not err in finding that plaintiff made reasonable efforts to mitigate damages.

Defendant suggests that this court should reconsider the general rule that a landlord is not required to mitigate damages by relet-

ting the premises. Because we conclude that plaintiff did engage in reasonable efforts to mitigate its damages, no such issue is before this court. Point III is denied.

Judgment is affirmed.

All concur.