**BLUE RIDGE CENTER LIMITED PARTNERSHIP, Appellant,**

v.

**Mike ZADEH, Respondent.**

**No. WD 52721.**

Missouri Court of Appeals, Western District.

April 22, 1997.

Leland Corley, Kansas City, for appellant.

Mike Zadeh, Overland Park, KS, for respondent.

SPINDEN, Judge.

Blue Ridge Center Limited Partnership appeals the circuit court's order awarding it $3855 in compensation for Mike Zadeh's breach of a lease with Blue Ridge. Blue Ridge contends that the circuit court erred in placing a duty to mitigate on it by limiting its damages to only three months' rent. We reverse and remand.

In April 1995, Zadeh entered into a lease with Blue Ridge to open a pizza business in the Blue Ridge Mall in Kansas City. The lease was to begin on either the day Zadeh opened for business or September 1, 1995, whichever was earlier. Zadeh never opened for business, and he did not begin paying rent on September 1, 1995. On October 6, 1995, Blue Ridge sent Zadeh a notice of default. Zadeh did not cure the default. On January 4, 1996, Blue Ridge sent Zadeh a second letter, advising him that pursuant to the default provisions in the lease, it was terminating Zadeh's right to possession without terminating the lease and was reentering the property to make any alterations or repairs necessary to lease the property to someone else.

On January 22, 1996, Blue Ridge sued Zadeh for breaching the lease and prayed for rent due and owing, interest on the rent due, attorney fees, and court costs. As of April 4, 1996, the date of trial, Blue Ridge had not attempted to find a new tenant for the property.

The circuit court ruled that Blue Ridge had a duty to begin attempting to mitigate its damages on December 1, 1995, and Blue Ridge's failure to do so was unreasonable. The court awarded Blue Ridge damages of $3855, representing only three months' rent, $475 in attorney fees, and court costs.

■ When a tenant defaults on a lease, the landlord can "(1) [r]emain out of possession, treat the lease as subsisting and collect rent; (2) give notice to tenant, resume possession of the premises and attempt to relet in order to mitigate any damages; or (3) reenter, resume possession in its own right and, effectively, terminate the lease." *MRI Northwest Rentals Investments I, Inc. v. Schnucks–Twenty–Five, Inc.*, 807 S.W.2d

531, 534 (Mo.App.1991). In this case, Blue Ridge chose the second option. The January 4, 1996, letter gave notice to Zadeh that Blue Ridge was terminating his possession of the property without terminating the lease.[1] When Blue Ridge accepted possession of the property and notified Zadeh of its intention to attempt to relet the property, Blue Ridge voluntarily assumed a duty to mitigate its damages. *Id.* at 535. Up to that point, Blue Ridge did not have any duty to mitigate its damages. *Brywood Limited Partners, L.P., v. H.T.G., Inc.,* 866 S.W.2d 903, 907 (Mo.App. 1993). The circuit court erred in deciding that Blue Ridge's duty arose sooner.

■ It is not necessary, however, to examine the sufficiency of Blue Ridge's mitigation measures. Blue Ridge's failure to take reasonable steps to mitigate damages after its duty arose was an affirmative defense which Zadeh, as the breaching lessee, had the burden of proving. *Jacobs v. Georgiou,* 922 S.W.2d 765, 771 (Mo.App.1996). Zadeh did not file any responsive pleadings; therefore, pursuant to Rule 55.08, he waived this defense. *Greene County v. State,* 926 S.W.2d 701, 704 (Mo.App.1996). The circuit court erred in raising Zadeh's affirmative defense *sua sponte.* We reverse and remand to the circuit court to modify its judgment awarding Blue Ridge compensation for rent from September 1, 1995, to April 4, 1996.

LOWENSTEIN, P.J., and HOWARD, J., concur.

---

1. Although the mall manager testified that Blue Ridge had not taken possession of the property from Zadeh, the January 4, 1996, letter from Blue Ridge to Zadeh clearly indicates otherwise. It said, "In light of your continuing defaults, the Landlord hereby exercises its right pursuant to ... the Lease, ... to terminate your right to possession of the Leased Premises without terminating the Lease, ... to re-enter the Leased Premises, ... to make such alterations and repairs as may be necessary to relet the Leased Premises, and ... to relet the Leased Premises or any portion thereof for such term or terms and upon such terms and conditions as the Landlord in its sole discretion shall deem advisable."