Jeanette F. HURWITZ and Evelyn
Floret, Respondents,

v.

William KOHM, d/b/a Advertising
Matrix Company, Appellant.

No. 40221.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 5, 1980.

Charles P. Todt, Susan M. Hammer, Clayton, for appellant.

John J. Gazzoli, Jr., St. Louis, for respondents.

STEPHAN, Presiding Judge.

Action for rent due under a lease. Respondents Jeanette F. Hurwitz and Evelyn Floret and appellant William Kohm, d/b/a Advertising Matrix Company, were parties to a commercial lease of office space at 1907 Locust Street in the City of St. Louis as lessors and lessee respectively. The lease was to run from September 1, 1970, to August 31, 1975. It specifically provided that default on the monthly payments by the lessee could, at the lessors' option, cause forfeiture of the lease but that such forfeiture did not relieve the lessee from liability under the lease. In the event of such default, the lessors had the option of reletting the premises as the defaulting lessee's agent and applying the proceeds of the new lease in mitigation of the lessee's liability.

As of March 1972, appellant was current in his payments. On May 3, 1972, appellant indicated to respondents that he intended to vacate the premises on May 10 and asked if some arrangement could be made to terminate the lease. Appellant also submitted rent checks for April and May. Respondents, however, refused to accept the checks, and attached the property of defendant on the premises; appellant's office equipment was thereafter kept under lock on the premises in question from May 5 on and appellant apparently sought no access to the building after that date. Respondents subsequently sued appellant for rent due, and in a summary judgment rendered on June 5, 1973, recovered for rent delinquent from April 1972 through June 30, 1973. The attachment of appellant's property remained in effect. That litigation eventually reached this court, which held that the summary judgment entered by the trial court was proper inasmuch as there was no genuine issue as to any material fact and respondents were entitled to judgment as a matter of law. See *Hurwitz v. Kohm*, 516 S.W.2d 33 (Mo.App.1974).

After the entry of that judgment in June 1973, respondents, through an agent real estate firm, continued their efforts to relet the premises. In February 1974, respondents located a prospective tenant for the property, identified in the record as Brass Shutter, and signed a contingent lease with that company, execution pending on Brass Shutter's obtaining the necessary use and occupancy permits. With a view to readying the premises for the new tenant, respondents notified appellant in March or April of 1974 that he would have to remove all his equipment from the property before April 13. Appellant did so, and by May 1, 1974, relinquished his keys to respondents' agent.

However, for reasons not fully disclosed on the record, Brass Shutter thereafter failed to obtain the occupancy permit. It therefore declared the lease void and demanded the return of the $700 deposit which it had paid, apparently at the time of the signing of the lease, to respondents' agent to be held in escrow. Respondents instead instructed their real estate agent to retain $400 for expenses and send the balance of $300 to them. Respondents, through their agent, were thereafter unable to find an occupant for the premises before the expiration of the term of the lease, August 31, 1975. Respondents made no attempt to induce appellant to return to the premises.

In this second suit, tried by the court without a jury, respondents were awarded an amount equal to the rent due under the lease as monthly installments from July 1, 1973, to August 31, 1975, with interest, less the $700 deposit forfeited by Brass Shutter. Kohm here appeals that award. We affirm.

In his first assignment of error, appellant argues that recovery in this suit is barred by the doctrine of res judicata in that respondents could have litigated the issue of the total amount of their damages in the prior suit, reported at 516 S.W.2d 33. In that suit, respondents had requested (in an amended petition filed on February 6, 1973) the unpaid rent accruing from March 1972

through February 1973 and were awarded the rent delinquent through the month of the judgment, June 1973. In the current suit, filed on January 8, 1974, respondents sought "all rent which may become delinquent by date of judgment" and accordingly were awarded the balance of the rental installments due under the lease. In both suits then, respondents sought and recovered only rent which had already become delinquent. Citing authority in support of the proposition that the theory of res judicata bars a plaintiff's relitigation of " 'an issue which was *or could have been* litigated in the first suit,' " (emphasis added) *Stickle v. Link*, 511 S.W.2d 848, 855 (Mo.1974), appellant avers that respondents herein could have, in February 1973, sought recovery for breach of both the expired and unexpired terms of the lease, which was to subsist through August 1975.

We can only assume that appellant is thereby making reference to the doctrine of anticipatory repudiation. However, not only does appellant cite no authority in support of his apparent contention that that doctrine is applicable to the current case and that the claimed remedy was available to respondents in 1973, in violation of Rule 84.04(d), appellant has wholly failed to construct any argument in that regard beyond the bald assertion that respondents "had the opportunity" and "should have" litigated their entire damages in the 1973 suit. It is not for this court to assume the role of advocate for the litigants before it. *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

■ We note incidentally that where the doctrine of anticipatory repudiation allows a plaintiff to sue for breach of an obligation whose time has not yet arrived, that action is but one optional remedy available to the plaintiff. See, generally, *Hawkinson v. Johnston*, 122 F.2d 724 (8th Cir. 1941), cert. den. 314 U.S. 694, 62 S.Ct. 365, 86 L.Ed. 555; 49 Am.Jur.2d § 178. Where a landlord elects to sue on an anticipatory breach of a lease, his measure of damages is not necessarily the unpaid rent but the value of the lessee's performance, with appropriate reduction for any benefit accruing to the landlord by reason of his repossession of the premises. We have found no authority for the proposition that the availability of that remedy precludes a lessor from bringing successive suits against a defaulting lessee on one or more installments as they become due because the principle of res judicata bars relitigation of an issue that could have been tried in a previous suit. That general rule of law must be presumed to give way to the more specific rule that an action grounded on anticipatory breach is an optional remedy. The doctrine of res judicata does not operate to make it mandatory. Indeed, in the first case involving these parties, the following appears at 516 S.W.2d 37:

"First, under the existing law of the State of Missouri, it is at least recognized that a lessor is under no duty to seek a new tenant when the lessee abandons the leased premises prior to the expiration of the term of a commercial lease, but may let the premises lie idle and *collect the rents reserved as they accrue.*" (Emphasis added.)

In *Consolidated Sun Ray, Inc. v. Oppenstein*, 335 F.2d 801, 810 (8th Cir. 1964), the court reviewed the Missouri law relating to the relationship between a lessor and a defaulting lessee, concluded that it "is in accord with the law generally on this subject," and quoted with approval from 52 C.J.S. Landlord and Tenant § 552, as follows:

" 'Similarly, where a lease has been repudiated by a tenant and the premises abandoned, and there are no covenants in the lease to the contrary, *the landlord may rest on his contract and sue for each installment of rent as it falls due*, or he may take possession of the premises, relet them, and recover from the tenant any damages suffered thereby.' " (Emphasis added.)

■ In his second assignment of error, appellant contends that judgment for respondents was improper because the evidence indicated that, upon appellant's default, respondents had accepted his surren-

der of the lease and had thereby released appellant from all liability under the document. It has been stated that under Missouri law a lessor has three options upon default by a lessee: (1) "To remain out of possession, treat term as subsisting, and recover rent"; (2) "Give notice to tenant, resume possession and relet to mitigate damages, collecting loss from tenant"; (3) "Reenter, resume possession in own right and close the term. If no notice is given and landlord resumes possession, he is deemed to be doing so to terminate the lease." *Babcock v. Reiger*, 76 S.W.2d 731, 735 (Mo.App.1934). See also *Rhoden Investment Co., Inc. v. Sears, Roebuck & Co.*, 499 S.W.2d 375, 386 (Mo.1973); *Consolidated Sun Ray, Inc. v. Oppenstein*, 335 F.2d 801, 810 (8th Cir. 1964). It is appellant's contention that in evicting him from the leased office with no notice to him of their intentions in doing so respondents chose option (3), and reentered the premises and attempted to relet in their own name. Respondents, of course, argue that they proceeded under the second option as appellant's agent for the purpose of mitigating appellant's damages. The trial court, as the trier of fact, obviously found for respondents on this issue.

■ Where, as in the instant case, the lease itself specifically authorizes the lessor to reenter the premises upon the lessee's default and relet the property as the lessee's agent to mitigate damages, there arises a rebuttable presumption that such repossession was accomplished for the lessee's benefit. *Crow v. Kaupp*, 50 S.W.2d 995, 998 (Mo.1932). See also *Whitehorn v. Dickerson*, 419 S.W.2d 713, 717 (Mo.App. 1967).

■ We look then to respondents' conduct following appellant's default to determine whether there is sufficient evidence to rebut that presumption. We note initially that we are precluded from considering respondents' activities prior to the first judgment in this matter. As noted, the lease was to run from September 1, 1970, to August 31, 1975. Respondents attached appellant's equipment on May 5, 1972, and began their efforts to relet through an agent at some unspecified time in 1972. Judgment in the first suit was entered on June 5, 1973. Appellant's contention that respondents accepted his surrender of the lease is an affirmative defense which would have barred recovery in that suit (for all but the two rental payments already delinquent at the time of respondents' reentry). Though appellant apparently did not raise the issue of surrender of the lease in the first case,[1] we have previously noted that the doctrine of res judicata will bar the relitigation of all issues which could have been tried in a previous suit. *Stickle v. Link*, 511 S.W.2d 848, 855 (Mo.1974). We therefore accept respondents' conduct up to the time of the judgment in June 1973 as an indication that they reentered the premises with the intention of doing so in appellant's name to mitigate damages.

■ We find nothing in respondents' subsequent conduct to indicate that they thereafter elected to treat the lease as closed. Appellant cites respondents' negotiation of the contingent lease with Brass Shutter and their demand that he return his keys to their agent and remove his equipment from the premises as countervailing evidence. We regard that evidence as totally neutral, however, as respondents would have logically pursued the named activities whether they were proceeding in their own name or

---

1. Apparently the only defense appellant raised in the first suit and the only point raised on appeal was that respondents had failed to make reasonable efforts to mitigate damages. Though this court found considerable authority to the effect that a lessor is under no duty to mitigate upon a lessee's default, it did not base its affirmance of the trial court on that ground. The court found rather that respondents' motion for summary judgment was accompanied by an affidavit of respondents' real estate agent attesting to the unsuccessful efforts to relet the premises; that appellant neglected to file an opposing affidavit; that appellant was therefore deemed to have admitted the facts alleged in the affidavit submitted by respondents; and that there therefore existed no genuine issue as to any material fact. *Hurwitz v. Kohm*, 516 S.W.2d 33, 37 (Mo.App.1974).

in appellant's. The evidence compels no particular conclusion as to their intentions in reletting. We believe, on the other hand, that the fact that respondents continued to keep the attachment of appellant's equipment in effect (until the negotiation of the Brass Shutter lease) is a clear indication that respondents intended, after the first judgment, to continue to look to appellant for any loss occasioned by his default. Judging the evidence then, as we must, in accord with the standards enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we find the trial court clearly justified in finding that respondents continued their efforts to relet in appellant's name and did not, at any time accept appellant's surrender of the lease.

In his final assignment of error, appellant contends that the trial court erred in not finding that respondents had constructively evicted appellant and rendered his performance of the terms of the lease impossible by forcing the removal of his equipment, demanding the return of his keys and denying him access to the building. In support of that argument, appellant cites *King v. Moorehead*, 495 S.W.2d 65 (Mo.App.1973), but the very part of the case quoted in appellant's brief refutes the argument:

> "A constructive eviction arises when the lessor, by wrongful conduct or by the omission of a duty placed upon him in the lease, substantially interferes with the lessee's beneficial enjoyment of the demised premises. Under this doctrine the tenant is allowed to abandon the lease and excuse himself from the obligations of rent because the landlord's conduct, or omission, not only substantially breaches the implied covenant of quiet enjoyment but also 'operates to impair the consideration for the lease'." Id., 70.

It is clear then that the doctrine of constructive eviction is applicable only when a lessee's beneficial enjoyment of the premises is interrupted by a lessor's "wrongful conduct." In this case it has been established as a matter of law that appellant defaulted on the lease. The lease itself provides that respondents could thereupon resume possession of the premises and relet. Respondents' conduct of which appellant complains was clearly performed pursuant to that provision and was clearly justified by the terms of the lease and common law principles. The doctrine of constructive eviction has no applicability to the instant case, and the point is accordingly ruled against appellant.

The judgment is affirmed.

WEIER and KELLY, JJ., concur.