CAMBRIDGE, District Judge.
Defendants P.M. Holding Corporation (P.M. Holding) and Continental Textile Corporation (Continental) appeal the district court’s judgment, enforcing certain guarantees P.M. Holding and Continental had made for the commercial lease obligations of Modern Textile, Inc. Plaintiffs A1 Kopo-low and A1 Kopolow Investments also cross-appeal the district court’s determination on attorneys’ fees and the court’s denial of their Rule 60(a) motion for clarification of judgment. For the reasons stated below, we affirm in part, reverse in part, and remand the matter for further proceedings.
I. BACKGROUND
In August 1977, Modern Textile, Inc., a Delaware corporation (Buyer), purchased the business and operating assets of Modern Textile Company, a Missouri corporation (Seller). Seller, a manufacturer of children’s clothing, was owned and operated by A1 Kopolow. In connection with that purchase, Buyer executed a 10-year sublease of Seller’s manufacturing facility in Clarksville, Missouri (Clarksville sublease)[1] and a 10-year lease of Seller’s manufacturing facility on Fee Fee Road in St. Louis, Missouri (Fee Fee Road lease). In addition to those leases, Buyer’s parent company, defendant P.M. Holding Corp., and Buyer’s sister company, Continental, executed an assurances agreement, whereby both corporations guaranteed Buyer’s obligations *1187 under the leases.[2] Seller subsequently changed its name to Al Kopolow Investment Company. See In re Modern Textile, Inc., 739 F.2d 808, 310 (8th Cir.1984).
After two years of operation, Buyer experienced serious business and financial difficulties. In December 1979, Buyer sold its business at the Clarksville facility, and orally subleased that facility to another garment manufacturer. The next month, Buyer and defendants P.M. Holding and Continental, as guarantors, received notice that Seller considered Buyer in default on the Clarksville sublease because Buyer had subleased the facility without authorization. In July 1980, Buyer’s sublessee vacated the premises and Seller reentered the facility.
In January 1980, Buyer also defaulted under the Fee Fee Road lease and vacated that facility. One month prior to such default, Seller had sold the Fee Fee Road facility to a third party, Travelers Insurance Co. (Travelers). In connection with that sale, Seller had assigned the Fee Fee Road lease to Travelers and expressly guaranteed the payment of Buyer’s rent obligations under the lease for a two year period. Seller had not, however, expressly assigned the guaranty of defendants P.M. Holding and Continental to Travelers. After Buyer’s default, Travelers made a demand on Seller for payment of rent and other amounts due under the lease. Pursuant to its own guaranty, Seller paid Travelers the sum of $82,992.47.
A1 Kopolow and Seller filed suit against defendants P.M. Holding and Continental in the Circuit Court of St. Louis County, Missouri, to enforce defendants’ guaranty of Buyer’s obligations under the lease agreements and personal employment agreement.[3] Later, on December 22, 1980, the case was removed to bankruptcy court after A1 Kopolow, Seller, and other creditors forced Buyer into bankruptcy.[4] During the course of these bankruptcy proceedings, the Trustee of Buyer’s bankrupt estate rejected the unexpired portions of the Clarksville sublease, as permitted under 11 U.S.C. § 365.
The first of two trials was held in January 1982, before the bankruptcy court. The bankruptcy court’s findings and recommendations were adopted by the district court. Following an appeal to this court, In re Modern Textile, Inc., supra, several issues remained. Trial resumed before the bankruptcy court in April 1985, and the bankruptcy court made recommendations to the district court based on its findings of fact and conclusions of law. On March 15, 1988, the district court adopted the bankruptcy court’s recommendations and entered judgment against Buyer’s Trustee in bankruptcy, P.M. Holding and Continental on all three counts of the complaint.
Subsequently, plaintiffs filed a motion for attorneys’ fees and a motion for relief pursuant to Fed.R.Civ.P. 60(a), seeking clarification of the judgment entered on March 15, 1988. A few days thereafter, defendants P.M. Holding and Continental also filed notice of appeal.[5]
On September 22, 1988, the district court held that plaintiffs could recover attorneys’ fees only for that portion of the action in the bankruptcy court which sought to recover the balance due on the leases; the court disallowed recovery of fees for the initial action, the employment contract aspect of the case, and the successive appeals *1188 which had been filed. The district court also denied plaintiffs’ motion for relief under Fed.R.Civ.P. 60(a) as moot, in light of the defendants’ appeal to this court. Plaintiffs filed their notice of appeal from the district court’s September 22, 1988 order, and both appeals were consolidated for oral argument.
II. DISCUSSION — DEFENDANTS’ APPEAL
A. The Fee Fee Road Lease
We begin by considering defendants’ argument that the district court’s enforcement of the guaranty, i.e., assurances agreement, with respect to the Fee Fee Road lease was error as a matter of law. The district court, having adopted the bankruptcy court’s findings and conclusions, held that (1) the guaranty was a specific guaranty entered into for the benefit of Seller, (2) Seller was the proper party to enforce the guaranty, and (3) Seller’s assignment of the lease to Travelers did not extinguish Seller’s right to look to the guaranty or the obligations of the guarantors, because the lease specifically contemplated assignment.
Defendants argue that notwithstanding the assignment clause in the lease, Seller’s sale of the Fee Fee Road facility and assignment of the lease operated to extinguish Buyer’s lease obligations to Seller and to discharge their guaranty to Seller as a matter of law. Defendants acknowledge that, after Seller assigned the lease, (1) Buyer’s lease obligations continued in favor of Travelers and (2) Seller made payment to Travelers pursuant to its own guaranty after Buyer’s default. Defendants argue, however, that Seller’s payment to Travelers merely subrogated Seller to whatever rights Travelers would have had against Buyer for default.
We find that the district court’s analysis as to whether the assignment of the lease operated to extinguish Buyer’s lease obligations and to discharge defendants’ guaranty is flawed. The district court failed to recognize that under general principles of contract law a property owner’s sale of property and assignment of an existing lease on that property operates to transfer all of his rights, powers, privileges and immunities with respect to that property to another person. 4 A. Corbin, Corbin on Contracts § 861 (1951). Such transfer extinguishes the grantor’s legal relations to the property and vests them in the grantee. Id. See also Ellison v. Henion, 183 Cal. 171, 190 P. 793, 794 (1920) (plaintiff cannot maintain an action upon a debt if he is no longer the owner of the obligation). Based on these principles, it is true that the sale by Seller of the Fee Fee Road property and its assignment of the existing lease to Travelers operated to extinguish all of Seller’s ownership interest in the property itself and in the lease obligations of Buyer, and to vest those interests in Travelers.
Seller argues, however, that although its ownership interest in the property and lease were extinguished and thereafter vested in Travelers, the sale and the assignment of the lease did not operate to discharge the defendants’ guaranty of the lease to Seller. We disagree. “The basic rule on the liability of sureties [or guarantors] is that ‘the surety [or guarantor] is not liable to the creditor unless his principal is liable’Q] thus he may plead the defenses which are available to his principal.” Rhode Island Hosp. Trust Nat’l Bank v. Ohio Casualty Ins. Co., 789 F.2d 74, 78 (1st Cir.1986) (quoting 10 W. Jaeger, Williston on Contracts § 1214, at 714 (3d ed. 1967)). In other words, “[i]f the guarantee has no cause of action against the principal, certainly there could be no obligation on the part of the guarantors to pay [the guarantee].” Stifel Estate Co. v. Cella, 220 Mo.App. 657, 291 S.W. 515, 519 (1927). See also Ellison v. Henion, supra, 190 P. at 795 (plaintiff cannot recover against the guarantor of a debt if plaintiff is no longer the owner of that debt).
In this instance, the sale agreement and lease assignment of the Fee Fee Road property clearly demonstrate that Seller transferred all of its ownership rights in the property to Travelers prior to Buyer’s default. By doing so, Seller divested itself *1189 of any cause of action it would otherwise have had against Buyer or the defendants as guarantors. Therefore, we conclude that immediately following the sale and assignment of the property to Travelers, Seller was not entitled to maintain a direct cause of action against Buyer on the lease or against defendants on their guaranty.
Our conclusion does not, however, rule out the possibility that the sale and assignment operated to transfer defendants’ guaranty to Travelers and that Seller later succeeded to Travelers’ rights on the guaranty under the doctrine of subro-gation. See 73 Am.Jur.2d Subrogation § 1 et seq. (1974). In order for such a transfer to have occurred, the guaranty must have been in the nature of a “general guaranty,” which by definition “is one for acceptance by the public generally,” 38 C.J.S. Guaranty § 7, at 1141 (1943); accord 38 Am.Jur.2d Guaranty § 20 (1968), and which is assignable under principles of contract law. See 38 Am.Jur.2d Guaranty § 35 (1968); 6 Am.Jur.2d Assignments § 121 (1963). As previously noted, however, the district court expressly found that defendants’ guaranty was a specific guaranty.
A special guaranty ... is one which is addressed to a particular person who alone can take advantage of it, and to whom alone the guarantor can be held responsible; it usually, but not necessarily, contemplates a trust or reposes a confidence in the person to whom it is addressed.
38 C.J.S. Guaranty § 7, supra, at 1141 (footnotes omitted). Missouri courts have consistently held that a special guaranty may not be assigned to another without the guarantor’s consent, see Kelly-Springfield Tire Co. v. Hamilton, 230 Mo.App. 430, 91 S.W.2d 193, 195 (1936); Dunham v. Hinton, 332 Mo. 517, 58 S.W.2d 439-40 (Mo.1933); Jobes v. Miller, 201 Mo.App. 45, 209 S.W. 549, 550 (Mo.App.1919), because “the liability of a guarantor is to be construed strictly according to the terms agreed upon, and a guarantor is bound only by the precise words of his contract,” Pelligreen v. Century Furniture & Appliance Co., 524 S.W.2d 168, 172 (Mo.App.1975).
With these principles in mind, we find that the dispositive issue is whether the district court correctly found the defendants’ guaranty to be a special guaranty. If the guaranty was special, it became discharged as a matter of law upon the sale of the property and assignment of the lease by Seller; if it was not, the guaranty passed with the lease to Travelers. In deciding the issue, we follow the well-established principle that where the terms of a contract are plain and unambiguous and are not reasonably susceptible of more than one construction, such terms should be given their plain and ordinary meaning without reference to extrinsic facts or evidence. Executive Hills Home Builders, Inc. v. Whitley, 770 S.W.2d 507, 508-09 (Mo.App.1989); W. Jaeger, Williston on Contracts § 609 (3d ed. 1961).
We find that the language of the guaranty is clear and unambiguous, and that the district court correctly found that defendants’ guaranty was a special guaranty running only to Seller. Therefore, we conclude that the sale of the property by Seller and its assignment of the lease operated to discharge defendants’ guaranty as a matter of law with respect to the Fee Fee Road lease. We also conclude that Seller’s payment of $82,992.42 to Travelers pursuant to its own guaranty upon Buyer’s default subrogated Seller to Travelers’ claims against Buyer for rents due under the lease.
Based on these conclusions, the district court’s judgment against defendants P.M. Holding and Continental as guarantors for Buyer under Count II will be vacated.
B. The Clarksville Sublease
Next, we consider the defendants’ argument that the district court erred as a matter of law in enforcing defendants’ guaranty with regard to the Clarksville sublease. The district court found that (1) the Clarksville sublease specifically authorized Seller to reenter the premises upon Buyer’s default and relet the property as *1190 Buyer’s agent,[6] (2) such an authorization raises a rebuttable presumption that Seller’s reentry and efforts to relet constituted a continuation of the lease and an effort to mitigate damages on Buyer’s behalf, rather than a forfeiture and termination of the lease, Hurwitz v. Kohm, 594 S.W.2d 643, 646 (Mo.App.1980), (3) defendants presented “no countervailing evidence sufficient to rebut the presumption,” and (4) Seller was entitled to recover rent, interest and damages against defendants under the guaranty-[7]
First, defendants do not dispute the district court’s application of the rule of law that where the lease “specifically authorizes the lessor to reenter the premises upon the lessee’s default and relet the property as the lessee’s agent to mitigate damages, there arises a rebuttable presumption that such repossession was accomplished for the lessee’s benefit.” Hurwitz, supra, 594 S.W.2d at 646 (citations omitted). Defendants argue, however, that in applying the legal presumption the district court improperly shifted the burden of persuasion to them and erroneously found that there was not sufficient evidence to rebut the presumption.
Under Missouri law, a presumption is not evidence, but a procedural rule of law “to effect a shifting to defendant of the burden of going forward with the evidence [which] disappears] from the case upon the production of substantial evidence which controverts the fact presumed.” Missouri ex rel. State Dep’t of Pub. Health & Welfare v. Ruble, 461 S.W.2d 909, 912-13 (Mo.App.1970); Terminal Warehouses of St. Joseph, Inc. v. Reiners, 371 S.W.2d 311, 316-17 (Mo.1963). “If the evidence adduced is not ‘substantial evidence,’ the presumption, of course, remains.” Terminal Warehouses, supra, 371 S.W.2d at 317.
We find no merit to defendants’ claim that the district court improperly shifted the burden of persuasion. While the court did not articulate to whom it assigned the burden of persuasion and the burden of production, we are confident from the court’s discussion of the evidence that the burden of persuasion remained at all times with the plaintiffs, although the legal presumption of reentry as agent for the lessee shifted the burden of going forward with the evidence to the defendants.
We also find no merit to defendants’ argument that the district court erred in finding that there was not sufficient evidence to rebut the presumption. Although defendants point to aspects of Seller’s conduct after Buyer’s default as evidence of termination of the lease (e.g., Seller’s attempt to relet the property for $50,000 per year instead of the base rent of $40,000 per year under the lease, and Seller’s refusal to accept offers to rent the facility for less than base rent during a depressed economy), we agree with the district court that such evidence is not probative on the issue of surrender, because it is *1191 likely that Seller would have pursued the same conduct whether it was proceeding on its own behalf or on behalf of Buyer. See Hurwitz, supra, 594 S.W.2d at 646-47 (finding that lessor’s conduct was “neutral,” i.e., insufficient to rebut the legal presumption that lessor reentered and relet property as agent for lessee). Therefore, we find that the district court properly found that such evidence was insufficient to rebut the presumption in operation. We further find that the evidence was sufficient to support the district court’s conclusion that Seller’s actions constituted a continuation of the lease. The evidence sufficiently demonstrated that Seller consistently looked to Buyer and the defendants’ guaranty for reimbursement for expenses and payments under the Clarksville sublease.
Defendants’ next argument is that Seller’s initiation of bankruptcy proceedings, which resulted in the Trustee’s rejection of the lease, at least partially discharged their guaranty with respect to the Clarksville lease as a matter of law. Initially, we note that this issue was never raised to the trial court. As a general rule, issues not raised in the trial court will not be considered on appeal, see Gregory By Gregory v. Honeywell, Inc., 835 F.2d 181, 184 (8th Cir.1987); however, “[wjhere issues of law exist and the parties have briefed and argued the issue on appeal and where refusing to determine the issue ‘injustice might otherwise result courts of appeals uniformly exercise their discretion to entertain the issue on appeal.” Cleland v. United States, 874 F.2d 517, 522 n. 6 (8th Cir.1989) (citations omitted). Here, defendants’ argument raises a question of law which has been briefed by both parties and which, in our view, could result in injustice if not considered by the court. Therefore, we proceed assuming that the issue is properly before us.
Defendants argue that, based upon the principle that extinction of the underlying obligation discharges the guarantor’s guaranty of that obligation, the Trustee’s rejection of the Clarksville sublease under 11 U.S.C. § 365 terminated the debtor’s obligations on the lease and thereby discharged their guaranty at least to the extent of any amount in excess of the amount chargeable against Buyer’s bankruptcy estate. We disagree.
11 U.S.C. § 365(g), which addresses the effect of a Trustee’s rejection of an unexpired lease, provides that “the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease_” Id. (emphasis added). Where the lease had not been assumed by the Trustee, such breach is deemed to have occurred immediately before the date of filing of the bankruptcy petition. See 11 U.S.C. § 365(g)(1). 11 U.S.C. § 502(g) also provides that any claim, e.g., a claim for breach of the lease, which arises as a result of rejection under § 365 shall be treated the same as if such claim had arisen before the date of the filing of the petition. We find it clear from these sections that the Trustee’s rejection operates as a breach of an existing and continuing legal obligation of the debtor, not as a discharge or extinction of the obligation itself. In other words, the lessor’s claim against the debtor for breach of the lease survives the Trustee’s rejection of the lease.
Although the Bankruptcy Code limits the amount which a lessor can claim against the debtor’s bankrupt estate following the Trustee’s rejection of an unexpired lease, see 11 U.S.C. § 502(b)(6)(A) and (B), that limitation does not operate to cut off and extinguish the lessor’s claim for amounts in excess of the amount chargeable to the debtor’s estate. As noted above, the lessor’s claim for breach survives the Trustee’s rejection; thus, the lessor can still look to the person or entity that guaranteed the debtor’s lease obligations. In other words, the liability of a guarantor for a debtor’s lease obligations is not altered by the Trustee’s rejection of the lease. This conclusion is supported by the fact that, under the Bankruptcy Code, even the “discharge of a debt of the debtor does not affect the liability of any other entity on ... such debt.” 11 U.S.C. § 524(e); see also First Nat’l Bank of Paulding County v. Millen- *1192 der, 149 Ga.App. 65, 253 S.E.2d 417, 418 (1979); 9A Am Jur.2d Bankruptcy § 782 (1980) and cases cited therein; M. Andrew, Executory Contracts in Bankruptcy: Understanding “Rejection, ” 59 U. Colo. L. Rev. 845, 931 (1988). We therefore conclude that the Trustee’s rejection of the Clarksville sublease did not discharge the defendants’ guaranty of Buyer’s lease obligations as a matter of law.
Defendants’ final argument with respect to the Clarksville sublease is that the district court erred in awarding $8,523.32 to the plaintiffs for sprinkler repairs. Specifically, defendants assert that they should escape liability for sprinkler repairs because the lease relieved the defendants of any obligations to pay repair costs covered by insurance,[8] and there was evidence at trial that an insurance claim covering such repairs was pending. We find that the record is wholly insufficient for us to determine the merit of defendants’ argument on this issue. In fact, we can find no specific reference to any sprinkler repair allowance in the record, nor the basis of the district court’s allowance for such repairs.[9] We therefore decline to consider the issue.
III. DISCUSSION — PLAINTIFFS’ CROSS-APPEAL
Plaintiffs’ appeal is from the district court’s September 22, 1988 order disallowing certain attorneys’ fees and denying plaintiffs’ Rule 60(a) motion for clarification of judgment.
A. Attorneys’ Fees
Plaintiffs assert that the district court erred in disallowing their request for attorneys’ fees related to the initial action against Buyer and defendants in state court, the employment contract portion of the case, and the successive appeals which had been filed. As a threshold consideration, defendants argue that the issue of attorneys’ fees is not ripe for consideration by this court, because the district court has not yet rendered a final appealable order with respect to attorneys’ fees, i.e., the district court has not awarded to plaintiffs a specific amount for attorneys’ fees. We agree. This court has previously held that an order awarding attorneys’ fees without determining the specific amount of that award is not a final and appealable order. See Gates v. Central States Teamsters Pension Fund, 788 F.2d 1341, 1343 (8th Cir.1986), and cases cited therein. Therefore, plaintiffs’ appeal with respect to attorneys’ fees will be dismissed without prejudice as premature.
B. Rule 60(a) Motion
We now consider plaintiffs’ claim that the district court erred in denying their motion for relief pursuant to Fed.R. Civ.P. 60(a) as moot. Plaintiffs’ motion requested clarification of the court’s March 15, 1988 judgment and calculation of interest on the amounts awarded to plaintiffs. It is evident from the district court’s order that the court believed it was without jurisdiction to consider the motion, in light of defendants’ pending appeal to this court.
We find that the district court did not err in denying plaintiffs’ Rule 60(a) motion for clarification. Rule 60(a) provides:
Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is *1193 docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
The plain language of the rule divests the district court of jurisdiction to correct mistakes or omissions in its judgment while an appeal of such judgment is pending before the appellate court, unless leave of the appellate court has been granted. The underlying purpose of this rule, we believe, is to protect the administrative integrity of the appeal, i.e., to ensure that the issues on appeal are not undermined or altered as a result of changes in the district court’s judgment, unless such changes are made with the appellate court’s knowledge and authorization. We note that after the appellate court has ruled on the appeal, the district court still has the power under Rule 60(a) to clarify and correct omissions in its judgment to reflect what the court originally intended, without leave of the appellate court, “so long as the Court’s corrections do not alter or amend anything expressly or implicitly ruled on by the [appellate court].” United States v. Mansion House Center Redevel. Co., 118 F.R.D. 487, 490 (E.D.Mo.1987), aff'd, 855 F.2d 524, 527 (8th Cir.), cert. denied, — U.S. —, 109 S.Ct. 557, 102 L.Ed.2d 583 (1988). Thus, while our ruling does not afford the plaintiffs with the specific relief sought, plaintiffs may, on remand, renew their Rule 60(a) motion for relief to the district court. At that time, the district court would have the power under Rule 60(a) to consider the propriety of making any requested corrections to its judgment.
IV. CONCLUSION
We therefore (1) reverse and vacate the district court’s judgment against defendants P.M. Holding and Continental under Count II of the complaint with regard to the Fee Fee Road lease, (2) affirm the district court's judgment against defendants P.M. Holding and Continental under Count I of the complaint with regard to the Clarksville sublease, (3) affirm that aspect of the district court’s September 22, 1988 order, denying plaintiffs’ Rule 60(a) motion for relief, (4) dismiss without prejudice the plaintiffs’ appeal with respect to the issue of attorneys’ fees, and (5) remand the matter to the district court for further proceedings consistent with this opinion.

. Because the Clarksville facility was owned by the City of Clarksville and merely leased to Modern Textile Company (Seller), Seller extended only a sublease to Modern Textile, Inc. (Buyer).

.The assurances agreement expressly provided that:
P.M. [Holding Corporation] and Continental [Textile Corporation], jointly and severally, guaranty to and agree with Seller that Modern [Buyer] will promptly discharge all of its obligations under the aforementioned leases, and do hereby guaranty the full and faithful performance by Modern [Buyer] of each and every term, condition and covenant of each of such leases.
Buyer and A1 Kopolow also entered into a personal employment agreement, whereby Mr. Ko-polow agreed to provide services as a children’s wear business consultant to Buyer.

. See supra note 2.

. Following removal from state court, plaintiffs filed an amended petition naming A. Thomas Dewoskin, Trustee in Bankruptcy for Buyer, as a party defendant in this action.

. Defendant Trustee did not join in filing the notice of appeal to this court.

. Paragraph 19 of the Clarksville sublease provided:
Upon the occurrence of any such event of default, Landlord shall have the option to pursue any one or more of the following remedies (as well as any other remedies provided by law) without any notice or demand whatsoever:
[[Image here]]
(b) Enter upon and take possession of the leased premises by summary proceeding, force or in any other manner, and dispossess, expel, and remove the Tenant and any other person who may be occupying the leased premises * * *. Such re-entry and/or repossession by Landlord shall not terminate this lease nor relieve Tenant of its obligations under this lease.... In the event of such re-entry or repossession by Landlord, Landlord shall also have the option to relet the leased premises as agent for Tenant....
(emphasis added).
Paragraph 33 further provided: "There shall be added to paragraph 19 the following: ‘Tenant hereby waives demands or notices required by statute or law in the event of a default or breach of the lease.’” (emphasis added).

. The district court recognized that if characterized as a forfeiture and termination of the lease, Seller’s actions would have operated to discharge defendants P.M. Holding and Continental’s guaranty as a matter of law; if characterized, however, as a continuation of the lease and reletting of the premises on behalf of Buyer to mitigate damages, defendants would remain liable to Seller on their guaranty.

. Paragraph 12 of the Clarksville sublease provided:
[T]he Landlord and the Tenant ... mutually release and discharge the other from all claims and liabilities arising from or caused by any hazard covered by insurance on the building or leased premises, or covered by insurance ... regardless of the cause of the damage or loss. This release shall apply only to the extent that such loss or damage is covered by insurance and only so long as the applicable insurance policies contain a clause to the effect that this release shall not affect the right of the insured to recover under such policies.

. Plaintiffs do not dispute that the district court granted an allowance for sprinkler repair in its determination of damages.