**In re Leroy and Lynn WALKER, Debtors.**

**Bankruptcy No. 95–45572–399.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Dec. 28, 1995.

David J. Harris, Gallop, Johnson & Neuman, L.C., St. Louis, MO, for New York Carpet World.

John V. LaBarge, Chapter 13 Trustee, St. Louis, MO.

Arthur S. Hyatt, St. Louis, MO.

Harold S. Dorsey, Law Offices of Charles Smith, St. Louis, MO.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

The issue presented is the proper amount and the status of a claim to be allowed from a commercial lease between the debtors and their landlord creditor.

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgements pursuant to 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF FACTS

Leroy and Lynn Walker (the "Debtors") voluntarily filed their Chapter 13 petition on September 18, 1995. The Debtors filed a Proof of Claim on behalf of New York Carpet World ("NYCW") on October 12, 1995. The Debtors objected to the Proof of Claim on October 18, 1995 and NYCW filed a Response to Claim Objection and Replacement Proof of Claim on November 2, 1995.

Subsequently, both parties agreed that NYCW has a claim against the estate of the Debtors. The dispute is in the amount and the status of that claim. To determine these issues, this Court must examine the landlord-tenant relationship between the parties according to Missouri law.

On June 14, 1991, the Debtors, doing business as Der Meister K–9 Services, subleased commercial property in St. Louis County, Missouri from NYCW. The five (5) year sublease was to expire on June 13, 1996. Because of defaults in rent payments by the Debtors in September through December of 1992, Debtors and NYCW executed a Sublease Modification Agreement (the "Modification Agreement") on December 31, 1995. Under the Modification Agreement, the Debtors granted NYCW a second deed of trust on certain rental property ("6811 Etzel") and a security interest in all the Debt-

or's business assets. *See* Sublease Modification Agreement, para. 9. The liens granted under paragraph 9 of the Modification were properly perfected by NYCW.

Debtors defaulted on the payments required by the Modification Agreement, and NYCW sued the Debtors in the Circuit Court of St. Louis County. The parties settled their dispute and the Debtors signed a Consent Judgement on March 22, 1994. Under the Consent Judgement, the Walkers agreed to pay NYCW $61,277.73 plus $150.89 per day for each day they remained in possession of the property. The Debtors remained on the property for forty two (42) days after the signing of the Consent Judgement. Debtors admit they are liable for $67,615.11 [1], but object to the remainder of NYCW's claim.

NYCW's argument is concisely presented in four parts. It argues entitlement to: 1) interest on the judgement under both the terms of the agreement and Missouri law, 2) attorneys fees and costs under the terms of the Consent Judgement, 3) unpaid rent from the date the Debtors vacated the premises until the date the Debtors filed their Chapter 13 petition, and 4) a secured status of $10,158.92 [2] of its claim based upon the valuation of the rental property in which it holds a second deed of trust.

## DISCUSSION

### I. Interest on Judgement

■ NYCW claims interest to the date Debtors filed their bankruptcy petition of $9,086.36 [3] which represents the interest at the statutory rate of 9.00% on the $67,708.11 Consent Judgement. NYCW claims it is entitled to this interest under Missouri Revised Statute § 408.040.1 [4] and under paragraph 8

1. This amount represents the $61,277.73 stated in the Consent Judgement plus the $150.89 per day times forty two (42) days for a total of $6,337.38.

2. Debtors stipulated that the value of the rental property at 6811 Etzel is $42,000. The outstanding balance on the First Deed of Trust held by Atlantic Mortgage is $31,841.08.

3. This interest amount has been adjusted downward from $9,098.86 because part of the costs shown on NYCW's Proof of Claim is included in

attorneys costs. *See* Memorandum in Support of Claim of New York Carpet World, at 5.

4. Mo.Rev.Stat. § 408.040.1 provides in relevant part: "Interest shall be allowed on all money due upon any judgement or order of any court from the day of rendering the same until satisfaction be made by payment, accord or sale of property; ... all other judgements and orders for money shall bear nine percent per annum until satisfaction made as aforesaid."

of the Modification Agreement. The Court agrees.

The judgement has not been satisfied by "payment, accord or sale of property" as required by Missouri law. Additionally, paragraph 8 of the Modification Agreement expressly provides for "interest ... at the prevailing statutory rate (9%) from the date such payments were originally due under the [original] Sublease." Accordingly, the interest component of NYCW's claim will be allowed as submitted by NYCW in the amount of $9,086.36.

## II. Attorney's Fees and Costs

■ NYCW further argues that it is entitled to attorneys' fees and costs from March 22, 1994 to September 18, 1995 in the amount of $8,355.50. NYCW states that the Consent Judgement provides for the payment of attorney's fees and costs. Again, the Court agrees.

The Consent Judgement clearly states "... together with costs of the proceedings to enforce this judgement." The Court concludes that the attempts to enforce the Consent Judgement and the filing of a proof of claim are costs of enforcing the judgement. Accordingly, Debtors have until Thursday, January 11, 1996 to file their specific objections as to the reasonableness of these attorneys fees and costs[5]. If an objection is timely filed, a hearing may be held and a determination shall be made as to the reasonableness of such fees and costs. In the event no objection is received by that date, attorneys fees and costs in the amount of $8,355.50 shall be allowed.

## III. Unpaid Rent after the Consent Judgement

■ The largest, disputed portion of NYCW's claim is $74,692.04 which represents sixteen and one half months rent from the entry of the Consent Judgement to the time the Debtors filed their Chapter 13 petition. At the November 22, 1995 hearing, the Debtors claimed that the doctrine of res judicata precluded NYCW from claiming the balance of the rent due under the lease.

NYCW argued at the hearing and in its brief that under Missouri law, res judicata does not bar a landlord from filing subsequent suits for rent or from collecting unpaid rent for the time both before and after a tenant vacates property.

NYCW relies upon the case of *Hurwitz v. Kohm*, 594 S.W.2d 643 (Mo.Ct.App.1980) ("Hurwitz II") as establishing the proposition that res judicata does not bar a landlord from filing subsequent suits for rent or from collecting unpaid rent for the time both before and after a tenant vacates the property.

In *Hurwitz II*, a landlord also sued a tenant for the remaining obligations under a commercial lease after the entry of judgement for unpaid rent and after the tenant vacated the premises. 594 S.W.2d 643 at 644. The trial court awarded rent on the remainder of the lease, and the tenant appealed arguing that the theory of res judicata bars a plaintiff's relitigation of "an issue which was or could have been litigated in the first suit." 594 S.W.2d 643 at 645. The court held that the availability to the lessors of suing for anticipatory breach of lease did not preclude lessors from bringing successive suits against a defaulting lessee for installments as they become due, despite the contention that res judicata prevented relitigation of that issue. *Id.* The court based its holding on the fact that anticipatory repudiation (i.e. suing for the entire obligation under the lease after a default on periodic payments) is an optional remedy and the doctrine of res judicata does not operate to make it mandatory. *Id.*

The same principles apply to the case before the Court. NYCW brought an action for rent and possession which resulted in the Consent Judgement. After Debtors vacated the premises, NYCW attempted to re-lease the property but was unsuccessful. NYCW now asserts its right to the remaining term of the lease after the date that Debtors abandoned the lease premises.

5. NYCW submitted a detailed statement of services rendered in support of this component of its claim. Any objection thereto shall refer to specific dates and descriptions of services.

The Debtors cite *Rhoden Investment Co., Inc. v. Sears, Roebuck & Co.,* 499 S.W.2d 375, 386 (Mo.1973) for the proposition that "if no notice is given and the landlord resumes possession, he is deemed to be doing so to terminate the lease." The Court has carefully reviewed *Rhoden* and does not believe it can be read as Debtors suggest. Of the three options cited for a landlord upon default by its tenant, no evidence was submitted which convinces the Court that NYCW resumed possession in its own right and closed the term of the lease. *Rhoden,* 499 S.W.2d 375 at 386.

The Court notes that the Consent Judgement does not refer to a termination of the lease, and Debtors produced no evidence that the Consent Judgement was intended to terminate the lease. The Court must conclude that NYCW reserved the right to sue for the remaining obligations under the lease. Accordingly under *Hurwitz II,* NYCW may now claim the unpaid rent from the date of the entry of the Consent Judgement to the date of the filing of the Chapter 13 petition. The $74,692.04 claimed by NYCW for unpaid rent under the lease shall be allowed.

## IV. NYCW's Secured Status

NYCW claims part of its claim is secured by virtue of the Modification Agreement. It claims a $10,158.92 secured claim on a second deed of trust on real property and a secured claim of $17,000 in the Debtors' personal property.

The parties have stipulated that the value of the property at 6811 Etzel is $42,000. NYCW holds a properly perfected second deed of trust on that property [6]. NYCW calculates the amount of its security interest in the 6811 Etzel property at $10,158.92 [7]. Accordingly, this portion of NYCW's claim is secured by the second deed of trust in the 6811 Etzel property.

6. The parties have stipulated that the judgment of the Associate Circuit Court was properly transcribed and is a valid lien.

7. Atlantic Mortgage holds a first deed of trust in the amount of $31,841.08.

Similarly, NYCW holds a properly perfected security interest in the business assets [8] of the Debtors. The Debtors calculated the value of these assets at $17,000 in Schedule B, Line 13. Debtors present no evidence asserting that the value is different than that represented on their schedules. Accordingly, $17,000 of NYCW's claim is secured by the Debtor's business property [9].

## CONCLUSION

In accordance with the above, it is

**ORDERED** that New York Carpet World is **ALLOWED** a secured claim of $27,158.92 and an unsecured claim in an amount to be determined later [10]. A final order shall be entered describing the final amount of the unsecured claim.

8. These business assets are described in more detail in NYCW's Table of Exhibits, exh. E.

9. By virtue of 11 U.S.C. § 506(a), NYCW holds a secured claim of $27,158.92.

10. *See* Part II of this Memorandum Opinion.